SHIRLEY, executrix, &c. of Shirley, deceased v. THE CONGRESS STEAM SUGAR REFINERY and another.

---

Where the mere personal security of the purchaser has been taken on a sale of land, the rule is, as between vendor and purchaser, to sustain the implied lien for the unpaid purchase money; and to consider any bond, note or covenant given by him alone as intended only to countervail the receipt for the purchase money contained in the deed and to show the time and manner in which the payment is to be made—unless there be an express or manifest agreement to waive such lien. And, on the other hand, generally to consider the implied lien as waived, whenever security is taken on the land for the whole or any part of the purchase money or whenever the security of a third person is given.

The mere taking a promissory note from the purchaser long subsequent to the conveyance will not waive the implied lien; and it rests upon the purchaser to prove it was intended as a waiver.

A mortgagee, however, who advances his money without a knowledge of the way in which the purchaser bought, will gain a priority over the seller's lien.

In the present case, the purchasers formed a company and gave their note for part of the consideration, and then became insolvent and conveyed the property to an assignee for the benefit of creditors: *Held* that this assignee stood merely in the place of the late purchasers and that the conveyance to him did not supersede the lien of the seller.

---

Bill to have a promissory note, given as part of the purchase money for an estate, declared an equitable lien upon the property.

Stephen Shirley, in the month of September, one thousand eight hundred and thirty-one, sold a house and lot, known as No. 140 Duane Street in the city of New York, to the defendants the Congress Steam Sugar Refining Company. The house and lot were conveyed to the company by Shirley; but only a small part of the purchase money was paid and no mortgage had been given, although the bill alleged that it was part of the terms of the purchase that one should be given.

In the month of July, one thousand eight hundred and

*January,
1836.*

*Equitable
lien.
Vendor and
purchaser.*

thirty-two, Stephen Shirley was about quitting the city of New York, on account of the prevalence of the cholera, and then an account was made out by the officers of the company, showing the balance due to Shirley, and the Treasurer and Secretary made out a promissory note for such balance and handed it to Mr. Shirley. It ran thus:

"Congress Steam Sugar Refinery.

"New York July 26, 1832.

$2,000.      "One year after date, the Congress Steam Sugar Refinery promises to pay to the order of Mr. J. Shirley, the sum of two thousand dollars, for value received.
"Truman Bibby,     "For the Refinery.
   Secretary."                                    "J. Delafield,"
                                                      Treasurer."

Stephen Shirley made his will; and, died. He appointed the present complainants his executrix and executor. Three hundred dollars had been paid to them by the treasurer of the company, Mr. Delafield, and the same was endorsed upon the promissory note.

In the month of October, one thousand eight hundred and thirty-one, the Congress Steam Sugar Refinery mortgaged the said house and lot, with other adjoining property, to the executors of Augustine Hicks Lawrence, deceased, for securing ten thousand dollars and interest.

On the twenty-second day of July, in the year one thousand eight hundred and thirty-three, the Congress Steam Sugar Refinery made an assignment of all their property to the defendant, Cornelius Dubois Junr., for the benefit of their creditors—giving him the usual power to sell and convey. Soon afterwards, the complainants learned that one Samuel Guppy was in treaty for the purchase of the said house and lot, and adjoining property; and, as it was deemed beneficial for all parties, an arrangement was made whereby the property was to be sold, and Mr. Dubois was to deposit a certain portion of the purchase money in the New York Life Insurance and Trust Company; and the same was to remain there until the claim of the complainants was passed upon by this court. These complainants prayed that the court would decree an equitable lien upon the money for the amount remaining due their testator upon the purchase

chasers for valuable consideration. There is certainly a
of the lot by the company, together with interest and costs.
The cause came up on bill, answer and proofs.

Mr. *P. J. Fish*, for the complainants.

Mr. *Van Winkle* and Mr. *Dubois*, for the defendants.

THE VICE CHANCELLOR :—As between vendor and pur-
chaser, the rule is, to sustain the implied lien for the pur-
chase money where the mere personal security of the pur-
chaser has been taken ; and to consider any bond, note or
covenant given by him alone as intended only to countervail
the receipt for the purchase money contained in the deed
and to show the time and manner in which the payment is
to be made—unless there be an express or manifest agree-
ment to waive such lien. And, on the other hand, to con-
sider the implied lien as waived, whenever security is taken
on the land for the whole or any part of the purchase money
or whenever the security of a third person is given (except,
perhaps, in the single instance of a bill of exchange drawn
upon a third person, as supposed in *Hughes* v. *Kearney*, 1
Sch. & L. 136, and as was the case in *Grant* v. *Mills*, 2 V.
& Beames, 306 :) unless there be an express agreement
that the equitable or implied lien shall be retained : *Fish* v.
*Howland*, 1 Paige's C. R. 20; Blunt's Ambler, 723, (n. 1.)
where the English authorities are collected and arranged
and these rules are extracted—see also 4 Kent's Com. 146,
and cases there cited.

In the case now presented, there is no evidence of any
express agreement or understanding, either at the time of
the sale or afterwards, that the defendant Shirley should
relinquish his right to look to the property for the payment
of the purchase money. He took no collateral security of a
third person, and there was no. express charge or incum-
brance upon the land itself, although, by the contract, a
mortgage was to have been executed to him. His equitable
lien, therefore, attached. Nor was it waived, according to
the principle just stated, merely by taking the promissory
note of the purchasers long subsequently to the purchase.

*1836.*

SHIRLEY
*v.*
SUGAR
REFINERY.

*January* 25,
1836.

That circumstance is not enough to operate as a waiver ; and if there were any agreement or understanding by which the lien was waived, the defendants are bound to prove it. For these reasons, the lien must be deemed to have existed as against the Congress Steam Sugar Refinery. But it became subordinate to the mortgage given by the company to the executors of A. H. Lawrence upon this and other lots, because they took their mortgage upon the strength of the legal title in the company, and without notice of the equity in favor of their vendor.

The next question then is, and it is the important one : whether this equitable lien for the unpaid purchase money remains as against the defendant Dubois, who claims under a deed of conveyance from the company to him, in trust for the benefit of creditors ? This conveyance or assignment may be called a voluntary one, similar, in all respects, to an assignment of an insolvent's estate by operation of law. It is not, however, a voluntary assignment, without consideration, and liable to be set aside as fraudulent. There is a sufficient consideration to support it in law, namely, the antecedent debts owing by the company, which it is intended to secure and pay as far as the property assigned will extend. But it is not pretended there is any other consideration—no fresh advances of money, no new sale and delivery of goods by Mr. Dubois or any of the creditors to induce the making of the assignment. Nor do I understand it was founded upon or connected with any composition-agreement or stipulation on the part of the creditors to accept of its provisions in satisfaction of their demands or that they have relinquished any legal rights against the company in consequence of the assignment. The company have merely placed the property in trust for the benefit of their creditors by this voluntary act on their part, although, by the acceptance of the trust, the title may have passed and vested in the trustee without the express assent or concurrence of the creditors or their becoming parties to the instrument : *Cunningham* v. *Freeborn*, 11 Wend. 241. Under such circumstances, it appears to me, neither the assignee nor the creditors stands in a situation to claim the rights of actual pur-

wide difference between persons who have acquired legal rights in this way, and those who contract, in the first instance, for the purchase of property and, upon the strength of a conveyance to be made to them, pay their money or part with their goods. In the latter case, they are purchasers in every sense of the word ; and when they act in good faith, without notice of any prior equitable lien or incumbrance, they acquire a title which cannot be affected by any such claims. In order to produce this exemption, however, the title should be founded upon a present *moving* consideration, not upon a past one—such as an antecedent debt, especially where the party does not release the debt but retains it and takes a conveyance or assignment of property not as absolute payment in the first instance, but to be applied in payment when the money shall be realized from it. How, then, can the equitable lien of the original vendor be defeated by such a transfer of the property ?

This question has certainly been passed upon in this court in the matter of Howe, 1 Paige's C. R. 128 ; and the case itself called for a decision upon the point. There, Howe, the petitioner, had equitable rights in respect to land against Tompkins, who had made a general assignment for the benefit of his creditors and judgments also had been recovered against Tompkins ; and the question arose, whether Howe was divested of his equity by the assignment or by the recovery of the judgment ? The chancellor held it to be a well settled rule of equity that the general assignees of a bankrupt take the estate subject to every equitable existing claim of third persons and cannot avail themselves of the legal estate thus acquired to defeat a prior equity ; although they have no notice of it at the time of the assignment. In this respect, he observes, assignees differ from *bona fide* purchasers of the legal estate and from mortgagees who have advanced their money on the credit of the land. And no good reason can be perceived why a different rule should be applied in favor of general assignees for the benefit of all the creditors from that which prevails in respect to those created by operation of law. Neither could be considered as *bona fide* purchasers. *Sir Simeon Stuart's case*, to which reference is had, supports the doctrine as equally applicable

1836.

SHIRLEY
v.
SUGAR
REFINERY.

to trustees for the benefit of creditors under a conveyance made by the debtor as to assignees in bankruptcy. But the chancellor intimates, and I think, very correctly, that the case might be different where creditors, without notice of the prior equity, had released their debts in consideration of an assignment made to trustees for their benefit.

In *Warner* v. *Alestyne*, 3 Paige's C. R. 513, the lien of the vendor for a balance of the purchase money was sustained, not only against the heirs of the vendee but against the widow in respect to her dower, inasmuch as she takes her dower by operation of law and not as a purchaser from her husband for a valuable consideration.

It is true that no express adjudication of the English courts is to be met with upon the precise point that a lien for purchase money shall be preferred to a trust for creditors created by the voluntary assignment or conveyance from the purchaser; and, probably, for the reason that the operation of their bankrupt laws have put a stop to the practice of making such assignments, so that questions of this sort can, very rarely, if ever, arise. Yet there is good authority for believing that the law is so understood to be settled in England. Sugden, the distinguished author of the treatise on the law of Vendors and Purchasers (now in its ninth edition,) after laying down the rule that persons coming in under the purchaser by act of law, as assignees of a bankrupt, are bound by an equitable lien, although they had no notice of its existence : because, the assignment, by operation of law, passes the rights of a bankrupt precisely in the same plight and condition as he possessed them, observes " and the creditors claiming under a conveyance from the purchaser are bound in like manner as assignees, because they stand in the same situation as creditors under a commission :" 2 vol 74, 75. And in *Fawell* v. *Heelis*, Ambl. 723, Earl Bathurst acknowledged the rule to be that the equitable lien for purchase money, where the seller has not waived it by taking other security, is good not only against the purchaser, but against his creditors, whether under a commission or under a deed of trust in the nature of a commission. It is certain, he says, that persons claiming under such a deed stand in the same situation as creditors under a com-

mission.  The Lord Chancellor's opinion, however, was
that the seller, in the case before him, had waived the lien by
giving a receipt on the back of the deed for the purchase
money and accepting bonds from the purchaser for the
amount—a doctrine since overruled.  But had he considered
the lien as existing, there can be no doubt he would have
held it good against the creditors of the purchaser who,
becoming insolvent, had conveyed the estate in trust for
their benefit.  A different opinion appears, nevertheless, to
have prevailed in the Supreme Court of the United States
in *Bayley* v. *Greenleaf,* 7 Wheaton, 46.  Chief Justice
Marshall, in delivering the opinion of the court, considers
that the vendor's lien cannot be asserted against creditors
holding under a *bona fide* conveyance from the vendee ; and
doubts whether it is settled in England that the lien remains
against the assignees of a bankrupt or creditors coming in
under the purchaser by act or operation of law.  Had the
learned Chief Justice gone a little further and looked into
some later cases—particularly *Grant* v. *Mills* before men-
tioned and *Ex parte Peake,* 1 Mad. C. R. 346, (for these do
not appear to have fallen under his observation)—it is pro-
bable his doubts upon the point would have been removed.
In the first of these cases, Sir Wm. Grant, M. R. treats
it, as a settled rule, not liable to be disputed, that what-
ever equity the vendor would have against the purchaser,
he is entitled to against his assignees : and in the last
case, where the question was between the vendor and the
assignee and creditors of a bankrupt vendee, Sir Tho-
mas Plumer, V. C., after showing that an equitable lien
existed without a special agreement to extinquish it, lays it
down to be equally clear that the right of lien applies also,
where the vendee becomes bankrupt, against his assignee :
they being in no better condition than the bankrupt himself.

   The Chief Justice, however, in the case before referred to,
remarks that were it completely settled that the vendor should
retain his lien against the assignees of a bankrupt, it would
not follow he would be entitled to it against creditors holding
under a *bona fide* conveyance from the vendee ; and he consi-
ders it to be inconsistent with the principles of equity and
with the general spirit of our laws that such a lien should be

1836.

SHIRLEY
*v*
SUGAR
REFINERY.

1836.

SHIRLEY
v.
SUGAR
REFINERY.

set up in a court of chancery to the exclusion of *bona fide* creditors. The reasons given for this conclusion are very concisely stated; and if by "*bona fide* creditors", creditors at large are meant, who have paid no present consideration and given up no present right in order to obtain a conveyance of the debtor's property, I, for one, must beg leave to dissent: for, upon no principle consistent with our laws, can the doctrine, in my opinion, as to creditors in this situation be supported. It would be to confound all distinction, which I think clearly exists, as has been already observed, between them and actual purchasers for valuable consideration without notice and to put the rights of such creditors, having claims only for antecedent debts, upon the same footing as though they had made fresh advances of money or goods or parted with some right upon the strength of the conveyance. If creditors have acquired rights in either of the last mentioned ways, in good faith and without notice of a prior equitable lien or trust, I agree it ought not to be supported to their prejudice; and I cannot help thinking that the reasons assigned, in the opinion of the late Chief Justice and the principles there stated, were intended to apply solely to a case of the latter description. It does not distinctly appear, from the report of *Bayley* v. *Greenleaf*, that it was not a case of this sort; but enough appears to authorize an inference, at least, that the creditor, for whose benefit and security the conveyance in the first instance was made, was not a mere volunteer. He had entered into engagements for Greenleaf, the plaintiff's vendee, to a large amount and the deed was made to secure these and also to secure the creditor for any further advances he might make or future engagements he might enter into on account of Greenleaf. The creditor, therefore, may have made further advances and incurred subsequent liabilities on the credit of the security; and if so, he was a mortgagee, as he appears to have been considered, not merely for an antecedently contracted debt but also in consideration of fresh advances and liabilities. Under such circumstances, without notice of the prior lien claimed by the vendor for purchase money, the right of the mortgagor might well be preferred. But supposing these particular

considerations not to have entered into the case of *Bayley* v. *Greenleaf,* and the decision to have proceeded upon the broader ground which would seem to be covered by the opinion delivered, it is not, I apprehend, to be implicitly followed as a binding authority in this court; and where the court has already established, as I think it has, a different rule, such decision cannot have the effect of disturbing it.

There are, indeed, a variety of instances in which the Federal courts, instead of overruling and undertaking to control the decisions of the state courts, submit to follow and be governed by the rules and principles which they establish: *Jackson ex dem. St. John* v. *Chew,* 12 Wheaton, 153.

I shall adhere to the rule as laid down *In re Howe;* and decree the lien to be a valid and subsisting one against the assignee and the creditors of the company. There is no difficulty about fastening this lien to the fund in the hands of the defendant Dubois, although it is not entirely the proceeds of the lot sold by the testator Shirley. As between the parties to this suit, the mortgage given to the executors of Lawrence must be deemed to have been satisfied out of the other lots which it covered, so as to leave the lien in question unimpaired, and the lot upon which it operated was sufficiently valuable to produce the money now in hand, so that the complainant's demand with their costs, must be satisfied out of it.