GEORGE C. BOORUM

v.

EDGAR TUCKER and wife.

1. Purchasers at a foreclosure sale who are not parties to the suit, become parties by signing the bid, and are liable to be proceeded against by petition for the specific performance of their contract.

2. Purchasers at a judicial sale are not entitled to what is called a merchantable title, but must be content with such a title as the proceedings show that they will get.

3. This court deals with the question of enforcing a contract of sale made with one of its officers upon equitable principles.

4. A mortgage given by a husband to secure unpaid purchase-money due the vendor upon conveyance of the land mortgaged, will have precedence over the inchoate dower of his wife, though executed and delivered some time after the execution and delivery of the conveyance, unless the vendor has, in the meantime, done some act which amounts to a waiver of his equitable lien for the purchase-money.

5. When a mortgage upon lands owned by a married man is executed by him alone, and afterwards his wife joins him in a conveyance of the land to a third person, and the mortgage is foreclosed against such third person without making the wife of the mortgagor a party, the purchaser under foreclosure will take the land free from the inchoate dower of the wife of the mortgagor.

On petition of the complainant, praying that the purchasers at sheriff's sale, under an execution issued upon decree herein, should be compelled to complete their purchase.

*Mr. James Flemming* and *Mr. Chetwood,* for the complainant.

*Mr. Acton C. Hartshorne* and *Mr. Charles E. Hill,* for the respondents.

PITNEY, V. C.

The complainant's bill was filed to foreclose a mortgage given by J. Morgan Giles to the complainant, bearing date the 28th of September, 1887, to secure a bond conditioned to pay $800 on the 28th of September, 1892, with interest semi-annually, with proviso that if the interest should be in arrear &c. the whole principal should become due.

The bill contains an allegation that the mortgage was given to secure a part of the consideration expressed in a deed made by the complainant, Boorum, to Giles, the mortgagor, without stating the date of said conveyance; and the mortgage itself contains this clause:

"Being the same premises conveyed by the party hereto of the second part [viz., Giles] to the party hereto of the first part [the complainant] by deed of even date herewith, and this mortgage being given to secure part of the consideration or purchase money of said conveyance."

The wife of Giles did not join in this mortgage.

The bill further states—and it is an admitted fact, for present purposes—that Giles and his wife subsequently conveyed the premises, by deed duly executed and acknowledged by the wife so as to bar her dower, to the defendant, Tucker.

Giles and his wife were not made parties defendant. The usual decree of foreclosure was taken, execution issued thereon to the sheriff of Monmouth county, and the sheriff, on the 26th of May, 1892, filed his report showing that on the 23d of May he had sold the property at public vendue to A. C. H. and C. E. H. (the respondents herein) for the sum of $1,255, and upon that return the sale was duly confirmed on the 3d of June, 1892.

On the 7th of November the complainant filed his petition, setting out briefly the proceedings in the cause, the terms, in part, of the sale, showing that the purchasers above named had signed the conditions of sale, and that the sale had been reported and an order of confirmation made, and that the purchasers did not pay the balance of the purchase-money at the time fixed by the conditions, nor take their deed; that they had been requested by the sheriff of Monmouth to do so and had refused, and praying that they might be ordered and decreed to specifically perform their contract by paying the balance of the purchase-money.

An order to show cause was made upon that petition and served upon the purchasers, who have separately answered the same, and the issue arising upon their answers was referred to and tried before me upon evidence produced orally in open court.

The power of the court to proceed in this manner is well settled and was not questioned. The purchasers, by signing the conditions of sale, made themselves parties to the suit and subjected themselves to the jurisdiction of the court, and may be proceeded against by petition.

They set out in their answers, as a reason for being relieved from their contract to purchase, two defects in the title of the premises purchased. *First.* They say that the premises are subject to a restriction contained in the conveyance under which the complainant herein derived his title, which still adheres in the

premises. That restriction is contained in the conveyance from Gilbert Giles (not the mortgagor) and his wife to the complainant, dated the —— day of December, 1892, and is in these words :

"And the said party of the second part for himself, his heirs and assigns hereby covenants with the said Gilbert Giles his heirs and assigns that neither the party of the second part nor his heirs nor assigns nor any of them shall or will at any time hereafter erect or make or suffer to be made or erected upon the above described premises or any part thereof any buildings other than those designed for the use and accommodation of private families or do or suffer or omit to do anything upon said premises in any wise making the locality less desirable for first class private residences."

*Second.* The respondents say the premises are subject to the inchoate right of dower of the wife of J. Morton Giles, the mortgagor, and in support of that they show the following facts : That the complainant, Boorum, conveyed the premises to Morton Giles by deed dated the 28th of September, 1887, and duly recorded on the 5th of November, 1887, and that Morton Giles gave back to the complainant a mortgage other than the one upon which the foreclosure proceedings are based, dated the same 28th of September, 1887, upon the premises in question, to secure the payment of $800, part of the consideration money, which mortgage was also recorded on the 5th of November, 1887, and that that mortgage was canceled of record on the 23d of March, 1888, and that the mortgage upon which the foreclosure is based, although dated on the 28th of September, 1887, was not executed until the 15th of March, 1888, and was not recorded until the same 23d of March, 1888.

The argument based on these facts is, that the original purchase-money mortgage having been surrendered and canceled of record and another mortgage taken months after the delivery of the deed, this second mortgage, though expressed to be given for purchase-money, and though actually given for purchase-money, does not bar the wife's inchoate right of dower; and further, that her joining with her husband in the conveyance of the equity of redemption to Tucker cannot be set up at any future time by the purchasers under these foreclosure proceedings as a

bar to her dower, because the same was made to a stranger, and that the purchasers under these foreclosure proceedings will get no better title than was conveyed by the mortgage upon which the foreclosure proceedings were had.

In support of their position, generally, they take, in the first place, the bold ground that in New Jersey a purchaser at a sheriff's sale under foreclosure proceedings is not bound to complete his title if it turns out that it is not what may be called a merchantable title. In support of this position they cite but a single authority in New Jersey, viz., *Ely* v. *Perrine, 1 Gr. Ch. 396.* That was a bill by a sheriff praying the specific performance of a contract, as here, to purchase lands sold under a *fieri facias* out of this court upon a decree in foreclosure. The ground upon which Chancellor Pennington refused to enforce the contract was, that the bill to foreclose was based upon a mortgage which was alleged in the bill to be signed and acknowledged by the wife, and was in fact signed by her, but not effectually acknowledged; that the decree recited and declared that the mortgage was not acknowledged by her, but, nevertheless, contained the usual clause of foreclosure against her. The chancellor held that such a decree did not bar her dower, but that it was calculated to mislead purchasers. The case falls short of holding the proposition contended for by the respondents.

I understand the rule in New Jersey to be that a purchaser at a judicial sale is bound to take such title as an examination of the proceedings will show that he will get; he is bound to examine for himself beforehand to see what title he will obtain by the sale. The court, however, treats a contract made with one of its officers as being made with the court itself, and will deal with its contractee upon equitable principles—the same principles, indeed, which govern in all cases of specific performance. *Campbell* v. *Gardner, 3 Stock. 423; Cool's Exr.* v. *Higgins, 8 C. E. Gr. 308; S. C., 10 C. E. Gr. 117.* This last case came before Chancellor Zabriskie on demurrer to a bill to enforce the lien of certain legacies against lands which had been sold by a master of this court upon a decree in proceedings under the statute authorizing the sale of lands limited over after an

estate for life, and purchased by the defendant, who supposed he was getting the title free and clear of encumbrances. Chancellor Zabriskie says (at *p. 313*): "If Mr. H. was ignorant with regard to his rights, he must, like other purchasers who purchase at a sale by sheriff or order of any court, who often suppose that they buy free from all encumbrances, take the property subject to all pre-existing liens and encumbrances." When the cause came to final hearing before Chancellor Runyon, he ordered the legacies paid out of the proceeds of the sale, on the ground that the master had publicly announced at the sale that the land would be sold free and clear of these very liens, and assurances to the same effect were given by the parties interested in the proceedings.

In *Hayes* v. *Stiger, 2 Stew. Eq. 196*, the purchaser at a foreclosure sale asked to be relieved from his bid, on the ground that the wife of the mortgagor and owner of the equity of redemption had not been cut off by the foreclosure proceedings; and it was admitted that the title would be burdened with her inchoate right of dower. The application was refused after an elaborate examination of the authorities. Vice-Chancellor Van Fleet says (at *p. 197*): "The petitioner was represented at the sale by a member of the New York bar. The sale was fairly and regularly conducted, and no imputation is made against the officer who made it, nor against any other person. If the petitioner acted under a mistake, he alone was responsible for it. He neither sought information by examination nor inquiry. His misapprehension was entirely the result of his own carelessness and inattention to his interests." And again (at *p. 198*) he says : "No attempt has been made to show that the title the petitioner will get, if his contract is enforced, is worth less than the sum he agreed to pay; it cannot, therefore, be assumed that he will be required to pay more than the title he will acquire is worth. As the case stands, the highest equity he can claim is that he has not made as good a bargain as he expected to make. This can hardly be esteemed an equity sufficient to justify the abrogation of a contract."

This last remark applies to the case in hand, for here no proof

was offered that the property was not worth the amount that was bid for it.

The same principle was adopted in *Twining* v. *Neil, 11 Stew. Eq. 470,* where the court refused either to relieve the purchaser on his application or to enforce the sale against him on application of the complainant in the decree, but left both parties to their remedy at law. To the same effect is *Sullivan* v. *Jennings, 17 Stew. Eq. 11,* which is the latest judicial expression on this topic.

But the respondents in this case do not rest upon that point alone, but take the further ground that the agent of the complainant was present at the sale and represented to them that the property was sold under a purchase-money mortgage and was free from all encumbrances; and they say that both representations were untrue in this—first, that the property was not free from encumbrances, claiming that the restriction in the deed above set forth was an encumbrance, and, second, that it was not sold under a purchase-money mortgage, and would therefore be subject to the dower of Mrs. Giles.

There is a fair conflict of evidence as to whether or not this representation was made before or after the sale; but, assuming that it was made before the sale, and that the bidding took place upon the strength of its truth, let us inquire whether or not the representation was untrue.

*First.* With regard to the restriction in the deed—it was an ordinary building restriction, such as is found in many conveyances, made, undoubtedly, as well for the benefit of the lot sold as for that of the adjoining property, as a part of a general scheme for building purposes, and was of a character such as would not be called an encumbrance in the sense in which that word was used by the agent of the complainant and must have been understood by the purchasers. He undoubtedly referred, and was understood by the bystanders to refer, to money liens, mortgages, judgments and the like. There was no proof that the restriction reduces, in the least, the value of the premises.

*Second.* With regard to the other representation, that the property was sold under a purchase-money mortgage, and hence,

inferentially, that it would not be subject, in the hands of the purchaser, to an inchoate right of dower on the part of Mrs. Giles, the question presented is more serious, but, after careful consideration, I have come to the conclusion that it also must be resolved against the purchasers.

In the first place, I conclude that, in a court of equity at least, the position is not well taken that the present mortgage is not a purchase-money mortgage, because it was, in point of fact, executed some time after the original deed was made and delivered. A purchase-money mortgage is one given to secure a part of the purchase-money, and this mortgage, under the evidence, was undoubtedly so given. It so declared upon its face, and the clear inference, from the proven facts, is that it was given in place of the first mortgage and to correct a manifest error which appears on the face of that instrument. Upon an examination of the first mortgage, it appears that it—framed in the fashion used in New York—recites a bond bearing even date, conditioned to pay $800, without stating the time when the same should be payable or the rate of interest. At the end of the conveyance is a proviso that the mortgage shall be void if the mortgagor shall pay to the mortgagee the aforesaid debt of $800 on the day and time hereinbefore mentioned, with lawful interest, without stating when the payment matured. There was evidently an omission in the recital of the bond in that behalf. The mortgage upon which the foreclosure proceedings are based recites, apparently, the same bond, and states the condition to be that the money shall be paid on the 28th of September, 1892, with interest thereon at the rate of five per cent. per annum, payable semi-annually, with the privilege of paying the same at any time on giving thirty days' previous notice; and it also contains a declaration that the mortgage is given to secure a part of the consideration money upon a conveyance of the premises by the mortgagee to the mortgagor, by deed of even date.

Now, it may be that, at law, this cancellation of one mortgage and the execution of another would let in the widow's right of dower. Upon that question I express no opinion. But in equity I am of the opinion that no such right would result.

The equity of the holder of the purchase-money obligation, as against the grantee and debtor, rises higher than the mere cotemporaneous execution of a mortgage to secure it. It does not rest alone upon the notion of instantaneous seizin, which preserves the right of the mortgagee as against previous judgment creditors of the mortgagor. Protection is expressly given to the mortgagee against judgments against the mortgagor, by the seventy-seventh section of the act concerning conveyances (*Rev. p. 167*), though, no doubt, he would be entitled to it in equity without any statute. It is worthy of notice that, although this provision was passed in 1820, and has been twice subjected to revision, none of the learned revisors thought it worth while to amend it by inserting the wife's inchoate dower.

In the case in hand, if no mortgage whatever had been executed and a bill had been filed by the present complainant against Morton Giles and his wife while they were owners of this property, to enforce a lien for the purchase-money, that lien, upon well-settled principles, would have been superior to the wife's inchoate right of dower, and a sale under it would have cut off that dower. *1 Scrib. Dow. ch. 20 § 44 p. 441; ch. 25 p. 555*, and cases there cited; *Overt. Liens § 626*, and cases there cited; *Warner* v. *Van Alstyne, 3 Paige 513; Shirley* v. *Sugar Refinery Co., 2 Edw. Ch. 505*. The wife is a mere volunteer, and her inchoate right is subject to all the equities to which the lands were subjected when her husband became seized. The so-called lien for unpaid purchase-money is such an equity.

In *Armstrong* v. *Ross, 5 C. E. Gr. 109*, there was drawn in question a mortgage given by a married woman, Mrs. Vernam, to a Mrs. Libby, as a part of the consideration money of a conveyance of the premises by Mrs. Libby to Mrs. Vernam. The latter executed the mortgage for a portion of the consideration money, in which the husband did not join. Chancellor Zabriskie (at *p. 120*) held the mortgage void as such, but that the complainant, who held the mortgage by assignment, was entitled to a lien for the purchase-money. He adverts to the question whether or not the taking of the mortgage in that case was a waiver of the vendor's lien, and uses this language on *p. 121:*

"The taking of a note or bond will not be held evidence of a waiver of the lien, and taking this mortgage, which, though void, *shows an intention to preserve the lien,* surely will not be held a waiver of it."

This language is significant in view of a variety, if not a conflict, of opinion in the various state jurisdictions of this country as to what acts on the part of a vendor will be held to be a waiver of his lien.

It seems to be settled upon the principle involved in the maxim *expressum · facit cessare tacitum,* that taking a mortgage upon *all the land* conveyed for a *part of the purchase-money* and a promissory note for the balance, is a waiver of the lien for the amount of the note (*Bond* v. *Kent, 2 Vern. 281*); and taking a mortgage for *all the unpaid purchase-money* upon a *part of the land,* is a waiver of the lien upon the lands not included in the mortgage. *Capper* v. *Spottiswood, Taml. 21 ; Dudley* v. *Dickson, 1 McCart. 252.* So, taking a mortgage upon a *part of the estate*— *e. g.,* the rents and profits—to secure a life annuity, is a waiver of the lien as to the fee. *Fish* v. *Howland, 1 Paige 20.* Or taking it on the fee and not including the rents and profits, is a waiver as to these. *Little and Telford* v. *Brown, 2 Leigh 353.*

But the question of waiver or no waiver does not arise here, and, indeed, cannot arise at all, as it seems to me, where the ordinary mortgage is taken for *all* the unpaid purchase-money upon *all* the land and estate conveyed. In such a case the question of waiver of the vendor's lien vanishes upon an attempt to state it. The real question is, whether the taking such a mortgage at a date subsequent to the date of the conveyance has the effect in equity of giving the wife a right which she had not before. For, in the supposed case, the purchase-money is unpaid at the moment the mortgage is given, and hence has priority over the wife's right. Now, the taking a mortgage for the unpaid money does not pay it. It has no more efficiency in that respect than a promissory note or sealed obligation. The debt remains, and it is still a debt for the purchase-money of the land. The ground upon which a vendor's lien is enforced in equity is well settled. It was tersely stated by Lord Eldon, in *Macreth* v. *Symmens, 15*

*Ves. 329* (at *p. 340*), to be, " that a person having got the estate of another shall not, as between them, keep it and not pay the consideration." That equity prevails against the vendee and all mere volunteers under him, and, as before remarked, his wife is a mere volunteer. Now, the crucial question here arises, is it any less inequitable for the vendee and volunteers under him to " keep the estate and not pay the consideration money " after he has given a mortgage to secure it, than it was before he gave it? How does the mortgage discharge the land or the conscience of the owner from this equity ?

It is impossible to infer from the facts of the case in hand that it was the intention of the parties that the mortgage should cover only the estate of the husband and exclude the inchoate right of the wife, since it was carefully dated back to the date of the deed of conveyance, and it was expressed to be given to secure a part of the purchase-money, thus adopting the familiar and all-sufficient mode used by conveyancers to preserve its priority over the wife's right.

The true view, in my judgment, is, that a purchase-money mortgage is, in its essential nature, in equity, precisely the same thing, so far as the wife's dower is concerned, as a vendor's lien for unpaid purchase-money. The effect of such a mortgage is a mere practical embodiment of the vendor's lien in legal shape, so that he may give notice of it to all the world, and be able to enforce it at law as well as in equity. The so-called vendor's lien is nothing more or less than the right to come into a court of equity and ask it to appropriate the property to the payment of the debt ; and that is precisely the right which is assured to him in writing by the formal execution and delivery of the mortgage. It is a formal and explicit statement in writing that the purchase-money, to the extent named, is unpaid, and that the creditor is entitled to have the land sold to pay it. Thus far in equity. At law, it is also a conveyance of the land to the vendor in pledge. So that if we compare the case of a mortgagee of a purchase-money mortgage upon land coming into a court of equity and asking for foreclosure against the mortgagor and his wife, and that of a vendee of land without mortgage coming into

10

Boorum *v.* Tucker.

the same court to enforce his so-called vendor's lien against the vendee and his wife, we shall find it difficult to distinguish between the cases—at least I do. In short, it seems to me that the execution of a mortgage to secure purchase-money is, in equity, a mere continuance of the lien, and it is that circumstance, and that alone, that gives it efficiency in this court to bar dower, or rather, gives it precedence over dower.

If we look at the case in hand and suppose that the first mortgage actually given had never had existence, and we had nothing but the mortgage sought to be foreclosed, we would find that up to the moment when that mortgage was executed the vendor's lien was in full force, with all its consequences. Then comes the mortgage which declared upon its face that it was given, as it was in fact given, to secure the unpaid purchase-money. When and where did the inchoate right of dower intervene and vest? It seems to me there can be but one answer to the question. Now, the giving of the intermediate mortgage did not vary the case, for that clearly barred the dower while it existed.

That a mortgage for purchase-money is, in effect, a continuation of the vendor's lien, was held, after elaborate and exhaustive argument by the leaders of the Ohio bar, in *Boos* v. *Ewing, 17 Ohio 500.* There, the mortgagee of a purchase-money mortgage had neglected to place his mortgage on record until some time after the statutory period, so that, under the registry laws of Ohio, it had become void as against judgment creditors, and in the meantime judgment had been obtained against the vendee and mortgagor. Notwithstanding, it was held that the vendor's lien was not extinguished by the taking of the mortgage, but was continued in the mortgage and was superior to the judgment. I think the reasoning of the learned judge (at *pp. 522–524*) is unanswerable. It is to be remarked that a judgment creditor is usually put upon the same plane as a *bona fide* purchaser for value without notice.

The very question here involved appears to have been decided in *Wheatley* v. *Calhoun, 12 Leigh 264.* There, land was conveyed pursuant to a contract by which the vendor agreed to accept a purchase-money mortgage for a part of the price.

Owing to a dispute as to the terms of the mortgage, it was not executed or delivered until several months after the delivery of the conveyance. It was, nevertheless, held to be paramount to the right of dower of the wife of the vendee.

I am of the opinion, therefore, on this ground alone, that the wife of Mr. Giles has no inchoate right of dower in the premises.

I think, also, that if I had come to a contrary conclusion as to the effect of the mortgage, her inchoate right of dower was barred by her joining with her husband in a conveyance to the defendant, Tucker.

The authorities are not in accord on this subject. There is a line of cases in Massachusetts and in the Western States which hold that the joining by a wife with her husband in the conveyance of the premises to a party under whom the present holder of the title does not claim, shall not bar her dower. They are principally cases where the conveyance in which the wife joined had been set aside and held void as against creditors. Under such circumstances, in many jurisdictions, it has been held that those creditors could not set up the bar of that conveyance against the widow's dower. There is reason and logic at the base of this ruling, for the creditor should not be permitted to both approbate and reprobate, and hold the conveyance valid to bar the wife's dower and void as against his judgment.

Such of this line of cases as are not of this class go upon the ground that the extinguishment of the wife's inchoate right is due to the effect of estoppel arising out of her executing the deed, and that the person claiming the benefit of it must be in privity with the grantee of the deed in which she has joined.

But, whatever may be said in support of the rule adopted in other jurisdictions, such is not the law in this state. The contrary was distinctly held in the case of *Den* v. *Johnson, 3 Harr. 87*. It is true that the question there arose, not in an action directly brought by the widow for her dower, but upon a question of her competency as a witness. The action was ejectment by a person claiming title under a judgment against the grantor, brought against the fraudulent grantee; the wife of the debtor, Winings, was called as a witness, and it was held that she was

competent, by Chief-Justice Hornblower and Justices Dayton, Nevius and White.

Justice Dayton (at *p. 90*) uses this language:

"It was said on the argument that she was swearing in behalf of her own dower. But how? the verdict could not affect that question directly or indirectly. The object of her evidence was to show that the deed to Johnson was without consideration and therefore void as against creditors—not as against the grantors; as to them it was perfectly valid in any event, and her dower was unquestionably gone," citing authorities.

And Chief-Justice Hornblower (at *p. 97*) says:

"If she proved the deed fraudulent as to creditors, she did not thereby restore her husband's title to the land nor her own right of dower. As against her husband and herself, the deed would remain; both at law and in equity, a perpetual bar."

The decision in the case of *Den, Smallwood, pros.,* v. *Bilderback, 1 Harr. 497,* tends in the same direction.

To the same effect is what was said by Chancellor Zabriskie, in *Frey* v. *Boylan, 8 C. E. Gr. 90.* That was a bill for the specific performance of a parol contract by the defendant, Boylan, to convey certain lands to the complainant. Boylan's answer was that there was no contract, but if there ever was one, it had been fully performed by the complainant's accepting the title to the premises made to him directly by a sheriff upon sale upon execution issued upon a judgment against Boylan's grantor, one Walsh. To that the complainant replied that Walsh's wife had an inchoate right of dower, which was not cut off by the judgment, and the real object of the suit was to obtain a deed from Boylan and his wife, which would vest in the complainant all the title that Walsh and his wife conveyed to Boylan, and thus cut off the possible inchoate right of dower of Mrs. Walsh. Chancellor Zabriskie held, indeed, that there was no contract on Boylan's part beyond what he had already performed, but he said, further (at *p. 91*): "Mrs. Walsh, by joining in the deed to Boylan, extinguished and barred her right to dower. She can never claim it, nor can any one in her name, or as her assignee; the first section of the Dower act and the fourth section of the

act respecting conveyances must be regarded as settling this question. No one can claim, as assignee, a right that is barred or extinguished."

The section of the Dower act referred to is the familiar one which, in defining the rights of widows, declares that the widow, alien or not, of any person dying intestate or otherwise, shall be endowed for the period of her natural life of the one full and equal third part of all the lands, tenements and other real estate whereof her husband, or any other to his use, was seized of an estate of inheritance at any time during the coverture, to which she shall not have extinguished or released her right of dower by deed executed and acknowledged in the manner prescribed by law for that purpose.

Now, that seems to amount to a statutory canon which limits the widow's right of dower to lands in which she has not executed such a conveyance as is there described. The wife of Morton Giles, in this case, has executed such a deed of conveyance, and whatever may have been decided in other jurisdictions upon other statutory declarations of the widow's right of dower, I am unable to perceive how, in this state, she can be permitted to claim her dower under circumstances like those before the court.

It is said that the purchasers here will get only the title which was made by the mortgage; but I do not understand such to be the force and effect of a title under foreclosure proceedings. On the contrary, my understanding is, that whatever title any of the defendants holding subject to the mortgage had, passes to the purchaser; and it was so declared by Chancellor Runyon, in *Chilver* v. *Weston, 12 C. E. Gr. 435* (at *p. 439*), where he says: "By his purchase at the sheriff's sale he acquired not only the title which he held as mortgagee, but the title which E. B. W. had as mortgagee, both of these mortgages being prior to that of the complainant in this suit. He acquired, also, the title of Jones as mortgagee, and that of Howe as owner of the property." And again, in *Atwater* v. *West, 1 Stew. Eq. 361* (at *p. 363*); and by Vice-Chancellor Van Fleet, in *Mount* v. *Manhattan Co., 16 Stew. Eq. 25* (at *p. 31*). He there says: "I re-

gard it as certain that the title that they [purchasers at a fore-closure sale] thus acquired to the mortgaged premises invests them, so long as it stands, with all the rights and equities which inhered in the parties, whether complainant or defendant, at the time of the institution of the suit," and the head-note is to the same effect, and the decree in that case was affirmed upon that opinion by the court of errors and appeals in *17 Stew. Eq. 297.* And such I believe to be the clear weight of authority in other jurisdictions as well as our own.

In *Hoagland* v. *Watt, 2 Sandf. Ch. 148* (V. C. Sandford), the case was that the wife had not joined with her husband, Watt, in the mortgage sought to be foreclosed, but had subse-quently joined with him in a deed of conveyance to one Dana, who had in turn reconveyed to Watt, the mortgagor. It was held that Mrs. Watt had no interest beyond an inchoate right of dower in the equity of redemption.

The doctrine of this case was approved and followed by the commission of appeals, in *Elmendorf* v. *Lockwood, 57 N. Y. 322.* To the same effect is *Manhattan Co.* v. *Evertson, 6 Paige 457.*

The question was thoroughly considered in *Carter* v. *Walker, 2 Ohio St. 339 (1853).* There, the husband had given a mort-gage, his wife not joining, and had afterwards conveyed to a third party by a deed in which his wife joined. The mortgage had been foreclosed against the grantee of this conveyance, the mortgagor and his wife not being made parties, and title made to the present defendant under those proceedings. The mort-gagee died, and his widow (the present plaintiff) sued for dower, and it was held she could not recover. The judge who pro-nounced judgment said (*p. 343*): "These proceedings were com-menced for the purpose of foreclosing the equity of redemption, and appropriating the land to the payment of the mortgage debt. Gassaway [the grantee of the mortgagor and wife] held a com-plete title to the land, freed from every encumbrance or contin-gency except only the encumbrance of the mortgage; but all his right and title he held subject to the mortgage. Walker [plaintiff in foreclosure] had a right to have Gassaway's entire interest in the property sold, and the proceeds applied to the

payment of the mortgage debt. *Gassaway, as the court decreed, was entitled to the surplus after the payment of the mortgage ; he, then, was interested in having the property sell for the highest price. This could only be obtained by having sold, and vesting in the purchaser, his whole right and title, without encumbrance or reservation. If the property had been sold with the encumbrance of dower resting on it, it would have brought much less than if sold free from that encumbrance. Gassaway would have suffered the entire loss of such diminution, although, when he purchased the property, he had paid for and received a release of dower.* The court could not have sold, nor did they attempt to sell, less than Gassaway's entire right and title in the property, with all its incidents. What interest, then, was sold and passed to the purchaser? The entire interest of both Walker and Gassaway —of mortgagor and mortgagee—a complete title, freed from any claim of dower."

The case is precisely in point, and the reasoning satisfactory and apparently conclusive.

The only case looking in the contrary direction to which my attention has been called, is *Littlefield* v. *Crocker, 30 Me. 192.* There, a husband executed a mortgage in which his wife did not join, and afterwards conveyed, subject to the mortgage, to a third party by deed, in which his wife joined in such manner as to bar dower. Afterwards, the mortgagee instituted proceedings which, as I interpret the report, resulted in a strict foreclosure and not a sale. It does not appear that the grantee or the mortgagor was made a party. The mortgagee then assigned the mortgage to the defendant, and, the mortgagor having died, his widow brought an action for dower and recovered upon the express ground that the defendant's title rested only upon the mortgage deed, and could derive no benefit from the conveyance because not a privy to it.

It is to be observed that the opinion was oral and brief, and to me the reasoning is not satisfactory.

The question was raised and discussed, and, in effect, decided by Chancellor Williamson, in *Hinchman* v. *Stiles, 1 Stock. 361.* There, a man, before his marriage, executed a mortgage upon

one piece of land; after marriage he executed a second mortgage upon another piece of land, in which his wife did not join. Still later he executed a third mortgage, in which his wife did join, covering both tracts. The bill was filed on the third mortgage, which .was second in order of priority to each of the others. The mortgagor was dead, and his widow, being made a party, claimed her right to protection as against the mortgage on · the one lot in which she did not join, which was second in date, but was first upon the lot covered by it; and it was contended that for that purpose the third mortgage, second as to this lot, should be advanced in priority over that in which she had joined. The chancellor declined to do this, but ordered both lots· sold, free of the dower, of course, and the proceeds of the sale of the second lot brought into court. In the course of his opinion he says: "If the proceeds of the sale of the one lot pay off the first and third mortgages, there is no difficulty. Out of the proceeds of the other lot the widow's costs of the suit must first be paid, and one-third of the residue must be invested so that she may receive the interest during her life. The balance goes to pay the second mortgage, and if not sufficient for the purpose, the mortgagee, at the death of the widow, will be entitled to the principal invested for the widow's benefit, or so much of it as will be required to satisfy his claim. But suppose the third mortgage is not paid by the proceeds of the sale of the first lot, how, then, are the rights between the second mortgagee and the widow to be settled, consistent with the rights of the third mortgagee? The second mortgagee says: 'I am willing the widow's costs should be paid out of the fund. I will take two-thirds of the surplus, and the other third must be invested for the widow's benefit during her life.' But to this, the third mortgagee objects. His mortgage covers all the widow's interest in the fund, and her costs cannot be paid out of the fund, *nor can an investment of any part be made for her benefit, until the third mortgage is discharged.* Nor can the third mortgagee claim any of the fund until the prior encumbrance (the second mortgage) is discharged. There is no question in litigation between the second and third mortgagees. They make no point

in the case. The mortgages must be paid according to their priority. Should there be a surplus after paying all the mortgages, the widow, perhaps, may claim something more than the one-third of the surplus. She may be entitled to her costs, and to have the amount of her interest in the fund, which went to pay the second mortgage, first deducted, and also to have the one-third of the balance. But I have not well considered this point. When the property comes to be sold, it may be unnecessary to do so."

To hold that, under the circumstances of the present case, the wife of Morton Giles retains any inchoate right of dower in these premises, would lead to a rather strange result. The amount of the decree, with interest and costs at the time of the sale, amounted to about $1,150. The amount of the respondents' bid was $1,255, being $5 more than that of another responsible and apparently anxious bidder, who was substantially their sole contestant at the sale. It thus appears that there will remain a surplus of about $100 after the complainant has been paid his decree and costs, which represents the equity of redemption. Now, upon the admitted facts of this case, it seems to me quite clear that the defendant, Tucker, as grantee of Morton Giles and wife, the mortgagors, will be entitled to that surplus money. I do not see how Mrs. Giles can possibly make any claim to it, whatever equity she might have had in it if she had not joined in her husband's conveyance to Tucker. Now, the property was sold, according to the defendant's view of the evidence, upon the express statement that it was free from Mrs. Giles' inchoate right of dower, and, on the strength of that statement, it brought a price greater than the amount due the complainant on his mortgage, leaving a surplus, which will go, as I think, to Mrs. Giles' grantee, Tucker. Now, could it be possible that, after joining with her husband in a conveyance to Tucker of the equity of redemption, which is now represented by this surplus, she can still have a dower in the lands which she has so conveyed? It seems to me that a rule which leads to such a result therein manifests its own vicious character. Further, it seems to me that it was clearly the right of Tucker, the grantee of

Morton Giles and his wife, to have the property sold free and clear of Mrs. Giles' inchoate right of dower, for in that way only could he realize the full benefit of his conveyance.

To make the matter clearer, let us suppose the present case to be that Morton Giles had died, and that then a bill to foreclose had been filed, and that she, Mrs. Giles, had been made a party defendant. Could she, by any answer to such suit, assert any equity which would give her any part of the proceeds of the sale? If any surplus appeared after paying the complainant, would not Tucker be entitled to it by virtue of his conveyance from Mr. and Mrs. Giles? Further, if a decree in such a case could be framed which would confine the complainant to such a share of the proceeds of the sale as would be represented by the face of his mortgage, less the widow's dower, would not Tucker be entitled to all that remained after satisfying the complainant? It seems to me that he would. The surplus moneys in such case would represent the equity of redemption which was conveyed by Mr. and Mrs. Giles to Mr. Tucker, and for which, presumably, he paid them, and it would be a manifest injustice to Mr. Tucker to take any portion of that and give it to Mrs. Giles.

For these reasons, which the able and elaborate arguments of the counsel for the respondents have induced me to state at greater length than was perhaps necessary, I feel constrained to advise a decree that the repondents do specifically perform their contract. The petitioner is entitled to costs against them.