## WILLIAM J. SEWELL

### v.

## THE EAST CAPE MAY BEACH COMPANY.

1. Defendant corporation was organized under *Rev. p. 567*, authorizing it to deal in lands, and providing that the company's business should be managed by a board of directors. Defendant was threatened with a mortgage foreclosure of its entire property, which was depreciating in value. Its debts were large, and all attached to such property in its entirety.—*Held*, that the court will not interfere with the directors in disposing of the property as a whole, where there is no fraud and no violation of the company's by-laws, and the directors are sustained by a large majority of the stockholders.

2. While such disposal of the property as a whole practically results in winding up the present investment of the corporation, it is not a winding up, in law, of the corporation, which still continues to exist, with power to use the funds and securities derived from the sale in any future transactions by it.

---

Sewell v. East Cape May Beach Co.

---

On order to show cause.

*Mr. Edward Ambler Armstrong,* for the complainant.

*Mr. Howard Carron,* for the defendant.

GREEN, V. C.

The bill is filed by the complainant as a stockholder of the
East Cape May Beach Company, in his own behalf and in that
of any other stockholder who may come in and contribute toward
the expenses of the suit.   He is the owner of two hundred and
thirty-seven shares.   The defendant company was incorporated
under the "Act to encourage the improvement of real property
in this state" by a certificate dated March 1st, 1883, with an
authorized capital stock of $195,000, divided into three thousand
nine hundred shares of the par value of $50.

. The bill alleges that the corporation is the owner of a large
tract of land in Cape May which was conveyed to the company
by deed dated March 20th, 1883, subject to a mortgage dated
June 1st, 1882, made by Joseph Lutz to the Camden Safe
Deposit Company to secure bonds aggregating $50,000.

Default having been made in the payment of interest the
mortgage was foreclosed in this court, and a decree for foreclos-
ure and sale was entered.

The bill alleges that the stockholders authorized the directors
to make a sale of the property under certain conditions, but that
the officers and directors are about to dispose of it, not in pursu-
ance of the resolution of the stockholders, but in another manner
which is not beneficial to them.

It alleges that the interest due on the mortgage is $9,000 or
$10,000, upon which certain credits are to be allowed to the com-
pany by the holders of the bonds, and that there is also $200 of
taxed costs ; that after making the credits there will be due on
the mortgage something less than $60,000.   It alleges that these
officers have succeeded in making a settlement of the interest for
$7,000 in cash, and it further alleges that Isaac Hecht, the active
manager of the company has made an arrangement with James

Sewell v. East Cape May Beach Co.

E. Taylor, or persons for whom he is acting, for a sale of the property, by which certain allowances and deductions are to be made, the result of which is that a difference between what is actually paid to the holders of the bonds secured by the mortgage, and what is charged against the stockholders of the company as having been paid thereon, is proposed to be shared and enjoyed in some way or manner between Hecht, Taylor or some other person, to the exclusion of other stockholders of the company; and that it is the purpose to take a second mortgage on the property for $20,000 of the purchase-money instead of cash. It charges that Hecht and other officers have been and are acting fraudulently with reference to this matter, and for their own profit gaining an advantage, to the injury and detriment of the stockholders; and further, that the deed is already prepared and ready for delivery.

It also alleges that the company have no right or authority to make this conveyance, as the same is all the property of the said company, and that it is not in accordance with the conduct of its usual business and affairs, and unlawful, the consent or authority of all the stockholders not having been first had and obtained; that having obtained the consent of the stockholders for a different transaction, it is contrary to equity to enter into any other.

On presenting this bill, a rule to show cause with an *ad interim* stay was granted, on the coming in of which the company presented its answer, supported by the affidavits of Isaac Hecht and others.

By this answer it is averred that the value of the land is not increasing as alleged in the bill, but that on the contrary nearly one-third of the land has been washed away by the action of the ocean, and that it is now necessary that a large amount of money should be spent to prevent its being entirely submerged. That there was due December 1st, 1892, on the mortgage, interest amounting to $19,800, as well as a commission of $2,500 provided for in the mortgage and $200 of taxed costs. That the taxes for 1890, 1891 and 1892 aggregated, with penalties and costs, a sum between $3,400 and $3,500, making the total amount of indebtedness for interest, taxes &c. due upon the

property $26,000, upon which there has been allowed credits amounting to $4,387.50, leaving due for principal and interest &c. $71,612.50.

It denies that any of the officers have made a settlement of the interest with any of the holders of the bonds, as alleged in the bill.

It admits that an agreement has been made, which it is intended to carry out, and which was authorized at a meeting of the directors held December 22d, 1892, which they claim to be a modification of the terms originally proposed for the sale, alleging that at the meeting of the directors there were present more than a majority of the directors, and those who owned over seven-eighths of the stock of the corporation, who voted unanimously to accept the terms as follows:

"That said Taylor should assume and pay off all the indebtedness of the company, for which he should be allowed a credit on the purchase price of $68,500, which was to include the principal and interest and commission on the first mortgage and taxes, being a saving to the company of $2,900. That the consideration upon which said Taylor agreed to the increase of price was upon the express condition that instead of paying the said company cash, he should pay to the company $1,500 in cash and a second mortgage for $25,000 payable on or before five years, with interest at the rate of six per cent., which mortgage was to be a lien on all the property, subject only to the lien of the $50,000 mortgage. Said Taylor to pay off all other liens including taxes and arrearages of interest on the mortgage."

It insists that the president and directors of the company were fully authorized to make this contract with Taylor, without the consent of the stockholders of the company, but says that on January 4th, 1893, at a meeting of the stockholders in pursuance of a notice duly mailed to each, the action of the directors was ratified, approved and confirmed, and the company authorized to make a proper deed in pursuance thereof, as soon as the restraining order in this case should be vacated.

That at this meeting there were present persons representing two thousand two hundred and twenty-eight out of the two thousand five hundred and fifty-seven shares of the capital stock issued, and that all persons voted in favor of the proposition except the representative of ten shares.

The answer says it is not true that the directors and president of the corporation agreed to allow a deduction from the purchase-money as interest on the bonds secured by the $50,000 mortgage, the sum of about $18,000, and that it is not true that there was a difference of $11,000 between the amount actually paid to the holders of the bonds and the amount allowed thereon in the settlement of the said purchase.

. That it is not true that any of the officers or directors propose to share or enjoy in any way between themselves or with any other person or persons, any money other than their share of what would be paid to the said company and divided among all the stockholders *pro rata;* that it is not true that the company would have received upwards of $35,000 in cash for its property, but would have only been entitled to receive $23,000, and that it will, under the new contract, receive $26,500. They deny that any of them have been acting fraudulently or for their own profit or advantage or to the detriment or injury of the complainant or any of the stockholders, and allege that the property is daily decreasing in value, and that the company has been the owner of the property for more than eight years, and during all that time, although it has been for sale, and they have made great efforts to sell it, have never been able to get any offer for the property; that if they cannot effect this sale, the property will be sold under foreclosure proceedings in a very short time, and, at such sale, the property will not bring enough to pay the indebtedness due thereon, so that the stock of the company will be rendered utterly worthless.

It appears by the certificate of incorporation of the defendant company that it is organized for the purpose of buying, selling, settling, owning and improving real estate and erecting buildings and other structures thereon within the state, under the "Act to encourage the improvement of real property in this state." *Rev. p. 567.* By this act it is provided (§ 2) that the business of such company shall be managed by a board of one president and four directors. By the act such corporations are authorized to purchase, hold and convey lands and tenements.

It is sought to enjoin the consummation of the arrangement which has been made between the directors of the company and Mr. Taylor on two grounds. In the first place, that the officers of the company have made some arrangement by which the sum of $11,000, or some other sum, will be retained and divided among them to their own personal advantage, without the other stockholders being allowed to participate therein. This charge is directly met and denied by the answer and the affidavits which have been filed.

In the next place, it is insisted that the company have no right to make this transfer, because it contemplates a sale of all the present property of the company, as well as an adjustment of its debts.

All of the liabilities involved in the transaction are debts due from the company with reference to this property. The mortgage which covers the property has been foreclosed, and although a sale is stayed by an appeal, there is nothing to gainsay the statement that a sale under the foreclosure is threatening.

It is objected that, by a proceeding of this kind, the directors are practically winding up the corporation, and that it is a violation of the provisions which have been made by law to effect that object. While it may practically result in winding up the present investment of the company, it cannot be said to be a winding up of the corporation, as that term is legally used—the corporation still exists. It may have disposed of all of its real estate, and it may have made provision for the settlement of all its debts, but the money which it is to receive or the security which is to be given still belongs to the corporation and can be used in any future transactions by it. *Richwall* v. *Hotel Company, 106 Ill. 439; Town* v. *Bank, 2 Doug. (Mich.) 530.* The debts all attach to the property in its entirety. Its sale as a whole would seem to be necessary if it is to be sold at all. It is threatened with the sale under foreclosure, and if anything is to be saved it must be by an arrangement disposing of the whole and settling the debts.

The purchase and sale of real estate is expressly contemplated in the incorporation of this company. It does not buy and hold

Sewell v. East Cape May Beach Co.

and improve real estate simply as an incident to its corporate existence, but it was really created for the purpose, so to speak, of speculating in the purchase and sale of lands. This being so, it is necessarily within the power of the board of directors, to whose management the affairs of the company are entrusted by law, to say on what terms and credits the property of the company shall be disposed of. There is no allegation in the bill that any by-law has been violated. This court, in the absence of fraud, cannot interfere in the management of the affairs of the company by the directors, when they keep within the limits of their powers. *Ellerman* v. *Stockyards, 4 Dick. Ch. Rep. 217.*

Counsel, in his brief, urges that the meeting of the board of directors, at which the agreement sought to be enjoined was made, is illegal because it was held out of the state and that it does not appear that a by-law had been adopted authorizing them so to do. It does not appear that any by-laws were adopted. While it is alleged in the bill that the meeting at which the first arrangement was made was held in Philadelphia, no objection is made to that fact, and it nowhere appears that the meeting of December 22d, 1892, was held out of the State of New Jersey. If such was the fact, and it was unauthorized by by-laws, an allegation to that effect should have been made in the bill so that the defendants could have met the charge in the answer and affidavits.

It is further urged that the company has not complied with an order of this court to bring its books into this state. The company reply that it has complied with the order. I am not prepared to say on the case as presented that the company is in contempt and should not be heard on a rule which has brought it into court. Non-compliance with the order not to that extent should certainly not prevent its being heard. The complainant could not use on this motion any information to sustain his motion for injunction ; it should have been previously obtained and incorporated in the moving papers.

The equity of the bill has been met and denied by the answer, and the order should be discharged.