SIDNEY MITCHELL

v.

UNITED BOX BOARD AND PAPER COMPANY et al.

[Decided May 14th, 1907.]

1. An existing corporation agreed to sell its property to a new corporation organized by the officers of the existing corporation, the president and vice-president being the underwriters for twenty-five thousand shares of capital stock of the new corporation, being all of the stock except $1,000 subscribed for organization purposes. The agreement gave to the stockholders of the existing corporation the prior right to subscribe for the stock of the new corporation, and stipulated for a cash installment and for the payment of the balance in installments. To what extent stockholders of the existing company had subscribed to the new stock, or whether any stockholders other than the president and vice-president had so subscribed, did not appear.—*Held*, that a dissenting stockholder could question the validity of the sale, notwithstanding the offer to sell stock, since the condition of subscription for stock in the new corporation made the stockholder liable for additional payments and required his participation in another company.

2. A sale by a corporation of its property may be adjudged voidable as against it, at its suit or at the suit of a dissenting stockholder, by reason of constructive fraud, arising from the fact that the sale was made to its directors or to a buyer controlled by them in making the purchase, or that the sale was not at a fair price.

3. Contracts with a corporation for the services of a director, to be performed in the management of the ordinary business of a corporation, are valid, subject to judicial review, so far as the amount of compensation is concerned, either on behalf of stockholders of a going corporation or the creditors of an insolvent one.

4. Advances of money to a corporation by a director thereof may be secured, and a sale of property to the director to pay the debt is valid, so far as the transfer is concerned, subject to review on the question of the fairness of the price.

5. Where the proofs show that a dissenting stockholder, suing a corporation to restrain it from carrying out a contract for the sale of its property, may make out a case entitling him to avoid the sale on behalf of the corporation, he is entitled to such a preliminary injunction as will render a decree in favor of the corporation effective, if one should be finally made.

On application for preliminary injunction. Heard on bill and affidavits, answering affidavits and cross-examinations in open court.

*Messrs. Griggs & Harding, Mr. Richard W. Morrison* (of the New York bar), and *Mr. James Todd* (of the Chicago bar), for the complainant.

*Mr. James E. Howell* and *Mr. Frank R. Lawrence* (of the New York bar), for the defendants.

EMERY, V. C.

This is an injunction bill filed by a stockholder of the United Box Board Company against the company and its directors, and also against another corporation, the American Box Board Company, and its directors, to enjoin the execution of an agreement between the two defendant companies for the sale of certain assets of the United company to the American company. The defendant companies are corporations of this state. The agreement for sale is attacked as a fraud on the United company, and the bill is filed to protect its rights in the assets proposed to be sold. Application is now made for a preliminary injunction restraining the sale.

The affidavits disclose substantially the following facts: The United Box Board Company (which I shall call the *United*

company) is the owner of forty-two thousand nine hundred and eighty shares of the stock of the American Strawboard Company, of the par value of $100 per share, which stock is pledged with the Trust Company of America as security for $1,302,400 collateral trust bonds issued by the United company, and is also the owner of one thousand nine hundred and seventy-five shares of strawboard company stock not pledged as such security. It has also in its treasury for sale general mortgage bonds to the amount of $975,000, these bonds being secured on property of the United company, other than the strawboard company stock. The United company has a floating debt of about $850,000, and of this about $765,000 has for some time been advanced by or carried on the credit of Mr. Barber, the president, and Mr. Fleming, the vice-president of the company, both of them directors of the company, by endorsements of the company's paper. As security for these advancements and endorsements they hold the $975,000 bonds above referred to. Whether any others of the directors are creditors or endorsers does not clearly appear.

The United company, on December 20th, 1906, made an agreement with the American Box Board Company, a third company, for the sale to the latter of all of the strawboard company stock and $562,500 of its general mortgage bonds. The entire purchase price of the stocks and bonds is fixed together at the single sum of $850,000, payable in three installments of $250,000 each, on the 15th day of January, April and July, 1907, respectively, and the balance of $100,000 on October 15th, 1907. The American Box Board Company agrees, in addition, to execute an agreement assuming the payment of the outstanding collateral trust bonds, with interest, after January 15th, 1907, together with the sinking fund payments. The deliveries of the bonds and stock are, however, separated, and on the payment of the first installment of $250,000 on account of the whole purchase price, mortgage bonds to the amount of $300,000 are to be delivered, and on payment of the second installment of $250,000 on account the remaining $262,500 of bonds are to be delivered. On payment of the third installment of $250,000 the one thousand nine hundred and seventy-five unpledged shares of the strawboard company stock are to be delivered to the American company, and

the United company is then to deliver to the trust company (which holds the forty-two thousand nine hundred and eighty shares of strawboard company stock) an assignment to the American company of the equity in these shares, subject to the collateral trust mortgage. The trust company is to deliver this assignment to the American company upon payment to the trust company (for account of the United company) of the last installment of $100,000, and upon the delivery to the trust company for account of the United company of a due and sufficient instrument in writing of the American company, assuming and agreeing to pay the collateral trust bonds, with interest.

The agreement contains two provisions, inserted, as is now claimed by the defendant directors, for the purpose of specially protecting the rights of the United company and all its stockholders. The first is a clause in the agreement by which the United company has the right to repurchase all of the property and rights to be sold to the American company at any time before January 2d, 1908, upon repayment to the United company of the purchase-money which has been paid, with ten per cent. interest, and surrendering for cancellation any agreements assuming payments on the collateral trust mortgage. The second is a provision by which the American company gives to the stockholders of the United company the prior right to subscribe for its stock, for the purpose of carrying out this agreement of sale between the two companies, and the terms of subscription offered by the American company for its full-paid shares of $100 are cash installments of thirty-four per cent., three installments of ten per cent. each, payable on the 10th days of January, April and July, 1907, and four per cent. on October 10th, 1907, the balance as called for by the directors of the American company (not more than ten per cent. a year) until fully paid.

It is admitted in defendant's affidavits that the vendee company, the American Box Board Company, was organized at the instance of the officers and directors of the United company, and also that Messrs. Barber and Fleming are the underwriters for twenty-five thousand shares of its capital stock, being all of its stock except $1,000 subscribed for organization purposes. To what extent stockholders of the United company have subscribed

to the American company stock, or whether any stockholders other than the defendant directors have so subscribed, does not appear. The condition of the subscription making the stockholder liable for additional payments, and requiring his participation in another company subject to other control, precludes this offer from being considered as substantially an offer of an equitable share as on a division of the assets of the United company, and entitles the United company, or a dissenting stockholder suing in its right, to question the sale without regard to such offer. The thirty-four per cent. cash subscriptions makes up the $850,000 required for the cash payments of the agreement, which are proposed to be used by the directors of the vendor company to pay the floating debt of the vendor company due to or guaranteed by the two directors of the vendor company. The underwriting agreement of these two directors seems to be at present practically the sole asset of the vendee company, and in view of this situation it should, on the present application, be considered that the validity of the sale must or may be finally determined under the aspect of a sale to the two directors of the vendor company who control the vendee company, and whose claims against the vendor company are proposed to be satisfied from the proceeds of sale.

Counsel on both sides have argued the case from this standpoint, and complainant claims—*first,* that on the admitted facts the sale is illegal and void, and should be altogether restrained, without regard to the question of fairness of price; *second,* that the sale of the strawboard company stock is for a grossly inadequate price, and *third,* that the proposed sale is a scheme or conspiracy to deprive the United company of its most valuable asset and secure its benefit to the directors making the sale. On the part of the defendant directors it is claimed—*first,* that the sale is made by the directors as managers of the business of the company, and, in the absence of fraud or dishonest exercise of judgment, cannot be questioned by the company or stockholders suing in the right of the company; *second,* that the sale was for a full and fair price, and, in the present circumstances and financial condition of the company, is the best and only method of relieving it of pressing debts and assuring a more satisfactory finan-

cial condition; *third,* that the charge of actual fraud and conspiracy to obtain the stock for the directors is without any foundation or warrant.

The charges of conspiracy and actual fraud seem to be fully and fairly answered by the affidavits, but in order to have relief on this bill it is not necessary, in my judgment, to prove such actual fraud. If the sale should be held voidable as against the vendor company, by reason of legal or constructive fraud, arising from the fact that the sale was made to its directors, or to a vendee controlled by them in making the purchase, or that the sale was not at a fair price, the sale might be set aside on this bill. The application will therefore be disposed of from that view of the scope of the bill.

As to the validity of a contract made by a corporation, through its directors, with one or more of their body, a distinction seems to be made in the decisions of our courts, dependent to some extent on the nature of the contract. Contracts for the services of a director, to be performed in the management of its ordinary business, are valid, but subject to judicial review so far as the amount of compensation is concerned, and this either on behalf of stockholders of a going corporation or the creditors of an insolvent corporation. I examined all the decisions of our courts on this point in *Lillard* v. *Oil, &c., Co., 70 N. J. Eq. (4 Robb.) 197.* Advances of money by a director to the corporation may be secured, and a sale of property to the director, to pay such debt, is valid, so far as the transfer is concerned, but the price must be a fair one, and the price actually fixed is not final, but is subject to review. *Wilkinson* v. *Bauerle, 41 N. J. Eq. (14 Stew.) 635, 643, &c. (Court of Errors and Appeals, 1886).* In *Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. Law (9 Vr.) 505, 522 (Court of Errors and Appeals, 1875),* the language of Mr. Justice Dixon, while saving to the director of a corporation rights not arising out of express contract, including the right to the repayment of money loaned, is broad enough to exclude all express contracts, and if applicable to the circumstances of this case might make this sale altogether voidable by the company. For while the transaction in one aspect of it was, or may be claimed to be, a sale of the company's assets for the purpose of

paying its debts, yet in view of the fact that these debts and liabilities appear to be already secured by the deposit of mortgage bonds, the transaction in other aspects may be taken to be substantially an independent sale of the strawboard company stock, as to the advisability and terms of which the directors were so responsible to the company in their fiduciary capacity, that a sale to any of their number could be avoided by the company, without inquiry as to its terms or its favorable or unfavorable character. The general rule, that directors cannot lawfully enter into a contract in the benefit of which even one, without the knowledge and consent of the stockholders, of their number participates, was restated in *United States Steel Corporation* v. *Hodge, 64 N. J. Eq. (19 Dick.) 813 (Court of Errors and Appeals, 1902)*, and declared to be so firmly entrenched as not to be open to debate. The power of the stockholders to affirm the contract made with a director was recognized in this case, and for the reason that such contracts are voidable only as against the company considered as composed of the whole body of stockholders, not voidable by each stockholder in his own individual right. *Lillard* v. *Oil, &c., Co., supra (Vice-Chancellor Emery, 1903)*. This view of the voidability of a contract of sale by a director to a corporation, and its affirmance by a stockholders' vote, is affirmed in a leading English case. *Northwestern Transportation Co.* v. *Beatty, 12 App. Cas. 589 (Jud. Comm. 1887)*. In this case a director sold one of his own vessels to a shipping company, and the sale was affirmed by the stockholders with the aid of his own vote. Sir Richard Bagally says on this point: "The general principle is well established that, in the absence of charter provisions, a director of a company is precluded from dealing on behalf of the company with himself, and from entering into engagements in which he has a personal interest, conflicting, or which possibly may conflict, with the interests of those whom he is bound by fiduciary duty to protect, and this rule is as applicable to the case of one of several directors as to a managing or sole director. Any such dealing or engagement may, however, be affirmed or adopted by the company, provided such affirmance or adoption is not brought about by unfair or

improper means, and is not illegal or fraudulent or oppressive towards those shareholders who oppose it."

In the present case the agreement for sale was not communicated to the stockholders until after its execution. It has not been affirmed by the stockholders at any meeting, and if no such affirmance takes place one of the questions at final hearing will be whether the company (or complainant suing on its rights) can avoid the transaction as being substantially a sale of the company's assets to one or more of its directors, and not merely, as in *Wilkinson* v. *Bauerle,* an exercise in good faith of the power of the directors to sell or transfer assets of the company for the purpose of paying its debts, leaving the fairness of the price to be determined. If the sale should be held to be a proper exercise of the power of the directors, the further question will then arise as to the fairness of the transaction and of the price. If the sale is to be treated as a sale to the directors, then the burden of showing such fairness is on the directors. These questions cannot be properly decided until all of the facts relating to the sale and to the value of the strawboard company stock, and the probable effect upon the United company of the permanent withdrawal of the strawboard company stock from its assets and from its control, are developed at final hearing.

But inasmuch as the proofs now presented show that the complainant may at the hearing make out a case entitling him to avoid the sale on behalf of the company, he is entitled to such preliminary restraint as will render a decree in the company's favor effective, if it should finally be made. This can be secured, I think, by enjoining the final delivery of the shares of strawboard company stock, and the execution and delivery of the assignment of the shares of this stock now in the custody of the trust company, until the final hearing or further order.

As to the delivery of the bonds the situation is different. In the circular letter of December 20th, 1906, issued by the directors, announcing the sale to the American company and inviting stockholders to participate, the consideration price of the bonds and of the strawboard company stock is separated, $400,000 being fixed as the value of the stock in the directors' judgment, and $450,000 as the value of the $562,500 bonds,

being eighty per cent. of the par value. In the agreement, as above stated, on the first two payments, aggregating $500,000, the bonds are to be delivered. No objection is made to the price of eighty per cent. fixed for the bonds, or to their sale to the American company at that price. It would seem, therefore, that no injunction should be issued against carrying out this portion of the agreement of sale if the American company and the directors of the United company choose to do so, and upon settling the order for preliminary injunction I will hear them as to the necessity or propriety of imposing, as a condition of granting the injunction, such terms as will protect defendants if this portion of the contract be carried out.