The bill in this cause was filed to foreclose a mortgage made by the defendant to the complainant. The defendant sets up in its answer that "it never executed or delivered a bond and mortgage to the complainant, and that no authorized officer ever executed a bond and mortgage to the complainant; that the premises mentioned in the bill of complaint purchased by the defendant from the complainant *Page 153 
have been fully paid for except for a small amount, and that no mortgage was executed or delivered to secure such amount." These are the pertinent defenses.
I will take up the first defense — that the bond and mortgage were not executed by authority of the defendant:
The defendant corporation is a family affair, which appears to have consisted of Mr. Scala, Mr. Tozzi and his wife (who is a daughter of Mr. Scala) and Lena Scala, another daughter of Mr. Scala. Lena Scala was the secretary, and, on organization, one Smith appears to have been the president, but shortly after the organization he dropped out, and it is alleged on one side that Mr. Scala was the president during the transactions in question, and, on the other side, it is denied. It is perfectly apparent, however, that Mr. Scala was recognized as president, because he signed the certificates of stock. Mr. Tozzi appears to have been manager of the corporation, completely dominating and controlling all its actions. The minutes of the meetings were not written up in the minute book, but were kept on sheets of paper. They do not show the election of Mr. Scala as president, and, if I recall aright, they do not show the election of Mr. Tozzi as president, although he claims to have been president at the time. There is no resolution authorizing the making of this mortgage. The Scala Realty Company owned the premises in question. Some time before the mortgage was made, the Bayonne Ice Company, or Scala, or both, commenced the construction of a building for an ice plant on the premises, and about four months before the making of the mortgage the defendant entered into possession and began operations. On the 17th day of October, 1921, the complainant made this deed to the defendant, the consideration price being named as "one dollar," but the actual consideration is stated indifferently as "fifteen thousand," or "fifteen thousand five hundred dollars." This consideration was paid by the defendant taking the lands subject to existing mortgages, amounting to $9,975, and giving the purchase-money mortgage in question for $5,575. The deed, bond and mortgage were drawn by a Mr. Stern, a member of the bar of New Jersey, *Page 154 
practicing in Bayonne, and the same were executed in the defendant's office, Mr. Scala signing as president, and his daughter attesting and making proof as secretary, in the presence of Mr. Tozzi. The deed, bond and mortgage were then delivered. Mr. Tozzi says that he was present and saw the papers executed, but paid no attention to the bond and mortgage. On the contrary, it is testified to by Mr. Scala, and particularly by Mr. Stern, that Mr. Tozzi read over the bond and mortgage very carefully, word for word, and after that was done, it was executed by Mr. Scala, as president, and his daughter, as secretary. And the defendant then and there gave a check to Mr. Stern in payment of his bill. Mr. Stern, however, is doubtful whether the check was signed by Mr. Scala or by Mr. Tozzi.
Without going further, and assuming that the only objection to the mortgage is that it was executed without authority, the point arises as to whether Mr. Tozzi and the other stockholders are not estopped from setting up the want of power in Scala to act as president and affix the corporate seal. No objection was made to this mortgage until this bill was filed, some seventeen months afterwards, during which interval Scala and his son-in-law, Tozzi, have ceased to be friends and are engaged in litigation in other courts. The question presented for solution on this point is whether the defendant has not ratified the transaction, and is not estopped from setting up the defense that a resolution was not passed by the board of directors authorizing the execution of this bond and mortgage, and also that Mr. Scala was not the president.
As to the question of his not being president, the evidence shows that he was recognized as such and signed the certificates of stock. The minutes were so loosely kept, and there were so few meetings, that they lacked that evidential force that might be attributed to them had they been kept in the proper manner.
The defendant cites Aerial League of America v. AircraftFireproofing Corp., 117 Atl. Rep. 704; Bennett v. Keen, Rec'r,59 N.J. Eq. 634; Metropolitan Telephone, c., Co. v. *Page 155 Domestic Telephone, c., Co., 44 N.J. Eq. 568, to support the rule that the mortgage is invalid unless executed under the authorization of the board of directors.
In the Aerial League of America Case, supra, the complaint was on an oral agreement made between Woodhouse, as agent for the plaintiff, and Kerwood, as agent for the defendant. The defense was that Kerwood had no authority from the defendant to modify the written contract, or to make a new contract for the one thousand six hundred square feet of space, and the court, finding that Kerwood had no such authority, reversed the Atlantic circuit court.
In Bennett v. Keen, Rec'r, supra, it appeared that Theodore E. Beck and his three sisters held all the stock of a corporation and constituted the board of directors. Theodore was president, and, without authority from the board of directors, made a mortgage upon the real estate of the corporation to Bennett 
Company "to secure, upon certain real estate of the corporation, its existing indebtedness to them, and such indebtedness as should be owning to them at one year from its date." Advisory Master Williams held that "it seems to be settled in this state that the president of a business corporation does not derive power to mortgage its lands by implication from the ordinary duties of his office." Subsequently, a resolution was passed, while the corporation was insolvent, approving and confirming the action of the president in executing and delivering the mortgage; and the mortgage was recorded the next day; and the advisory master held that the resolution of ratification could only avail against intervening rights in case the corporation was then competent to make a valid mortgage, and that, as at the time of the ratification, the directors were not in a position to give a valid mortgage to secure an existing creditor because of the insolvency of the corporation, he held the mortgage invalid as against the receiver. The decree so advised by him was affirmed by the court of errors and appeals.
While there does not appear to have been a meeting of the board of directors, at which a resolution was passed to execute the bond and mortgage, yet the facts as to the giving of *Page 156 
the deed and the making of the bond and mortgage were known to all the stockholders. Its business was loosely conducted, Tozzi having been in sole control and management, as heretofore stated. In the case of Breslin v. Fries-Breslin Co., 70 N.J. Law 274
(283), Mr. Justice Pitney, speaking for the court of errors and appeals, said: "It follows that many acts which the directors may do outside the scope of their powers become ratified and validated by the acquiescence of the body of shareholders, and, in general, the body of shareholders can ratify and confirm any act done by the directors or other officers of the corporation without a precedent authorization which the shareholders could have authorized originally."
In the case of Throp v. Payne Bros., Inc., 86 N.J. Law 304, the court of errors and appeals, speaking through Mr. Justice Minturn, said: "Acquiescence in the assumed agency of another, when the acts of the agent are brought to the knowledge of the principal, is equivalent to an express authority." He says further: "The rule of law is unquestioned that, if a corporation possesses the advantages and benefits of the agent's acts, with knowledge of the facts, whereby such benefits have accrued, it will not be heard afterwards to disown the intervening agency because of informalities in the execution of his powers. In such a situation the act of ratification relates back, and operates with the same effect as previous authority, the relation of principal and agent being treated as existing ab initio."
The transaction between the parties in this case was the sale of lands, the complainant giving to the defendant a deed therefor and taking back a purchase-money mortgage as part of the consideration. All the stockholders had knowledge of the transaction, and, with that knowledge, continued in possession of the lands for about seventeen months down to the filing of the bill without questioning the validity of the bond and mortgage; and, on the filing of the answer to the bill, defendant, as I understand it, for the first time, set up this alleged infirmity, at the same time retaining title to the property conveyed. Thus, it is endeavoring to retain the advantage *Page 157 
and benefits arising from the conveyance and repudiate the purchase-money mortgage for a portion of the consideration.
In the case of Boorum v. Tucker, 51 N.J. Eq. 135 (145), Vice-Chancellor Pitney said: "At law, it [the mortgage] is also a conveyance of the land to the vendor in pledge. So, that, if we compare the case of a mortgagee of a purchase-money mortgage upon land coming into a court of equity and asking for foreclosure against the mortgagor and his wife, and that of a vendee of land without mortgage coming into the same court to enforce his so-called vendor's lien against the vendee and his wife, we shall find it difficult to distinguish between the cases — at least I do. In short, it seems to me that the execution of a mortgage to secure purchase-money is, in equity, a mere continuance of the lien, and it is that circumstance, and that alone, that gives it efficiency in this court to bar dower, or, rather, gives it precedence over dower."
The conclusion that I have reached is that the defendant, by its acquiescence, is estopped from asserting that this bond and mortgage were improperly executed, but, even if this conclusion had not been reached, still the complainant has his vendor's lien for the unpaid purchase-money.
Touching the second defense, namely, that the mortgage was given for the accommodation of the complainant, and that at the time of the mortgage there was nothing due excepting a small amount. To support the theory of payment the defendant's position is this — the building on the lands was erected for the use of the defendant; the defendant says that while the purchase price agreed upon was $15,000, said sum was paid as follows:
 Mortgages on premises ....................... $9,925.00
 Taxes, past due ............................. 2,400.00
 Paid to materialmen ......................... 876.31
 Material and labor on building paid by check, 1,800.00

In the statement of disbursements furnished the total amount is given as $15,071.31, but in that statement the mortgages are estimated at $10,000. It is significant that on *Page 158 
this statement it appears that the latest item was paid October 5th, 1921, by check to Scala Realty Company, $400. No moneys were paid thereafter by the defendant to the complainant, and the deed, bond and mortgage were executed on October 17th, 1921, twelve days after the said last payment. Therefore, the only theory upon which the defendant can stand is that Mr. Scala asked Tozzi to endorse his note, and Tozzi declined. He then asked to have a mortgage made which he could assign and raise money on. These facts are not only denied by Scala, but the figures themselves tend greatly to disprove Tozzi's story. Scala says the consideration price wos $15,500, the defendant to assume the payment of the mortgages and the taxes. The mortgages on the premises at the time of the sale amounted to $9,925; the purchase-money mortgage given was $5,575; thus making the purchase price, as stated by Scala, $15,500. It seems strange that Scala should desire an accommodation mortgage for $5,575. Why add the seventy-five — why not make it $5,000, or $5,500 dollars? Why make it the precise figure, which was due, as unpaid purchase-money?
The burden of proof is on the defendant, and not only has it not borne that burden, but the evidence is strongly the other way; and touching the various items shown on this statement, aggregating $876.31, and the item of $1,800, Mr. Scala swears that they have no relation to the purchase price.
 A decree will be advised for the complainant. *Page 159