The statement of the condition of these causes is quite succinctly stated in the complainants' brief as follows:
"The bills filed in all the above cases were ordinary foreclosure bills, in all of which the Winchester Development Company was made a defendant, as the owner of the fee. They fall into three groups, as was pointed out at the time of the trial.
"The first group, consisting of the Trifeld, Hamilton andSeaboard Cases, are cases in which the receiver alone filed an answer and counter-claim. The receiver's answer sets up that the mortgages were executed by two parties purporting to act as president and secretary of Winchester Development Company, but without any authority from the board of directors, or stockholders, and without any consideration flowing to the Winchester Development Company. The counter-claim in each of the cases raises the same question as to lack of authority and lack of consideration to the Winchester Development Company.
"In the Seaboard Case the answer admits all the allegations of the bill relative to the first mortgage, but as to the second mortgage raises, by answer and counter-claim, the same defenses that are above referred to.
"In the second group, comprising the following cases: Eureka Casualty Company, Wallace, Putnam and Purchase, the bill sets up the recovery of a judgment against Winchester Development Company by the Kwass Realty Company, and Kwass Realty Company is, accordingly, made a party. The answer in these cases was filed by both Kwass Realty Company and the receiver of Winchester Development Company. *Page 53 
"The answer and counter-claim set up, as before, that the bonds and mortgages were executed by the president and secretary of Winchester Development Company, without corporate authority, and without consideration, and that the holders of the mortgage, all being assignees, took with knowledge of those facts.
"In the third group of cases, consisting of the following suits: O'Neill, Uhr and Meyers, the answer is filed solely by the Kwass Realty Company, and contains no counter-claim. The answer sets up that the mortgages were created without any consideration flowing to the Winchester Development Company, and without authority of the board of directors, and that the complainants (all of whom are assignees), took them with knowledge of those facts."
The brief of the solicitor of the defendant, receiver of the defendant Winchester Development Company, is of very little aid to the court. It consists of eight pages, evidently devoted more to an attempt to be witty and humorous than to exercise its primary purport, to aid the court in reaching a correct decision.
The contention of the defendant Riggins, receiver, is that these mortgages are not valid encumbrances upon the respective properties to secure debts of the insolvent corporation.
Obviously, the mortgages in order to bind the corporation must be its act, either by its corporate action or by its ratification or acquiescence, or because made by its authorized agent.Thomson v. Central Passenger Railway Co., 80 N.J. Law 328.
In citing this last case Mr. Justice Trenchard, in Beach v.Palisade Realty and Amusement Co., 86 N.J. Law 238, does not use the word acquiescence, but later in his opinion he says: "Of course, ratification will be implied from acquiescence, or acceptance of benefits, with knowledge of the facts."
Each of these mortgages was executed in due form, signed by the president, attested by the secretary, with the common seal affixed thereto. Such seal, accompanied as it was by the signature of the proper officers, became prima facie evidence *Page 54 
that such officers had due authority from the corporation to execute the instrument, such as casts the burden of proof upon any party challenging its validity, yet this presumption may be overcome by proof of want of authority by clear and satisfactory evidence. Beach v. Palisade Realty and Amusement Co., supra, and cases therein cited.
The contention of the defendant receiver is that the officers were never authorized to execute such mortgages or any of them.
To understand the method of the carrying on the business of this company, the following minute of the first meeting of the board of directors, at which all then stockholders were present, is quoted:
"Resolved, that the land and premises purchased by this company be developed by filling, building streets and sidewalks, curbs, structures and other improvements in order that said land may be sold to the best advantage in lots, blocks or as a whole, and that said land be advertised and sold through offices and through salesmen, and that the work of improving, developing, advertising and selling said land be and hereby is placed in the charge and management of the firm of Frank J. Pedrick Son, all of said work to be done in the discretion of said firm; said firm shall also have the authority to make contracts and purchase the materials and to employ the necessary labor to perform and carry on the work of development and care of the premises, including the carrying charges thereof, the said work to be done at cost to said firm. The said firm may also employ or engage a selling force on such terms as they may arrange, to dispose of said lands. They shall also have authority to fix the prices and terms from time to time upon which the said land shall be sold and to receive all amounts for which such sales shall be made and all installments thereof and to give good and valid receipts for such payments and to execute contracts on behalf of this company for such sales. Said firm is also authorized to borrow for and to advance to this company from time to time such amounts as may in their judgment be necessary to carry on the work hereby authorized to be done and to repay all such amounts so advanced or borrowed, as well as all current obligations, from any available funds in their hands. The authority of said firm of F.J. Pedrick Son under this resolution shall continue until modified or revoked by this company, and said firm shall make detailed reports of all their financial and other transactions for this company, from time to time, as may be required by this company, and all sums of money belonging to this company which may be in the hands of said firm shall be turned over to the treasurer of this company when requested by this company." *Page 55 
It is to be noted that the minute book is a loose leaf book, that the sheet upon which the above minute appears is not numbered by machine, as others are, but the numbering is by lead pencil. It is signed by the secretary, who was called, but who beyond testifying that all records were correct, had no present recollection thereof.
All the stockholders of this company were members of the firm of Frank J. Pedrick Son or employes thereof.
All the business of this company was done through said firm. It is manifest that this corporation was organized (as were a number of others) for the development of real estate, and that the firm of Frank J. Pedrick Son was the actual owner of all the stock of this corporation, and that other persons held stock only as nominal holders to qualify them as directors and officers.
At the time of the appointment of the receiver of the company, and the adjudication of bankruptcy of the partnership, the books of the firm showed that more money had been expended by the partnership on account of this company than had been received by the partnership on account of the company.
During the period of these mortgage transactions, Winchester Development Company had no creditors, whose rights are or could be affected by the lien of these mortgages. All, or practically all, moneys due to this company was received and delivered to said Frank J. Pedrick Son, placed in bank to their credit, but credited to this company upon said Frank J. Pedrick Son's books. Practically all contracts were made by Frank J. Pedrick 
Son, and payments made by them upon their bank account, but charged to this company upon their books.
It is manifest that Frank J. Perdick Son operated a number of subsidiary companies in the same manner, and the accounts showed credits and debits between the firm and the several companies, and also between the respective companies.
Practically no authorization to execute specific deeds or *Page 56 
mortgages appears upon the minutes of this company until about the time said Frank J. Pedrick Son or some of its subsidiary companies became financially embarrassed, and trustees for Frank J. Pedrick Son assumed control of said firm — after which resolutions concerning many transactions, some of which were retroactive, were passed.
The settlement for the consideration of the mortgages in question (or at least a great proportion of them) was had at a title company. This title company passed upon the form and validity thereof, and insured the title thereto.
The title company received the money for the mortgages or assignments, and after deducting its charges and such other (if any) items properly chargeable, delivered to (in nearly all instances) the president of the Winchester Development Company a check to its order for the amount so found to be due.
These checks were endorsed "Winchester Development Co." by its president, and deposited in one of the bank accounts of Frank J. Pedrick Son, and entered on the Frank J. Pedrick Son books to the credit of the account of Winchester Development Company.
It is unnecessary to determine the effect of the suspicious appearance of the minutes of the resolution above quoted. An examination of the entire minute book will evidence many changes in the numbering of the pages, insertion of many pages without the machine numbering, numerous ones numbered with pencil and by typewriter.
Nor is it necessary to determine whether this resolution authorized the execution of these mortgages. If it did not, the corporation is estopped from setting up the defense that no resolution was passed by the board of directors authorizing the execution of these several mortgages, all of the stockholders knowing of it and making no objection thereto, said company receiving the proceeds thereof.
The testimony is convincing that all the stockholders, both actual and nominal, were in touch at all times with the carrying on of the business of the corporation in the manner above described. *Page 57 
The action of the officers in the execution of these mortgages became ratified and validated by the acquiescence in the assumed act of agency of another, when the act of the agent is brought to the knowledge of the principal is equivalent to an express authority. Scala Realty Co. v. Bayonne Ice Co., 96 N.J. Eq. 152.
Further, the corporation had the benefit of the proceeds of these mortgages, and under those circumstances, the law is sufficiently settled in this state that the mortgage is valid and binding upon the corporation, and if valid and binding upon the corporation, then it is good against a judgment creditor of the corporation, who had notice, by the record of its existence.
The mortgagees and assignees were bona fide creditors of the company. They provided the consideration for the mortgages; and mortgages and assignments were executed in due form and by the proper officers; they were duly proven by the secretary; the proceeds were paid to a duly elected officer of the company by check to its order; the proceeds thereof crdited to the company by the firm of Frank J. Pedrick Son, which was, if we accept the validity of the resolution above quoted, the agent of the company. In the event of failure to accept said resolution as binding, the fact remains that Frank J. Pedrick Son paid out all funds of said company, in its hands on behalf of said company.
The result is, that a decree will be advised in favor of each complainant. If necessary, a reference will be made to a master to ascertain the respective amounts due. *Page 58