Complainants seek to compel the specific performance of a written contract to sell garage premises and a garage business in the City of Atlantic City, New Jersey, with furniture, fixtures, stock in trade and good-will, and to refrain from engaging in the garage business in Atlantic City for a period of five years from the date of settlement. The vendors named in the contract are the defendants Edwards and Lewis, Incorporated, owner of the real and personal property, and Edward Krassenstein, its secretary and the manager of its garage.
The sole controversial issue is whether or not the contract may be enforced against the corporation.
The contract was made March 16th, 1946. It was signed by Sarah Krassenstein as president of Edwards Lewis, Incorporated, was formally attested by Edward Krassenstein as secretary of the corporation, and the corporate seal was affixed. It was also signed by Edward Krassenstein as an individual, and by the complainants.
The defendant corporation was organized in 1928 by Edward Krassenstein and Louis Shamberg to purchase and operate the garage with which we are here concerned. Stock was issued to the two men and to their wives, as follows: *Page 328 
Edward Krassenstein 2,246 shares, Sarah Krassenstein 365 shares; Louis Shamberg 870 shares, and Fannie Shamberg 15 shares, a total of 3,496 shares. On the same day Edward Krassenstein sold 2,200 shares, 500 of which were purchased by one Edward Cohen. February 15th, 1939, the latter resold these shares to Edward Krassenstein and he has since owned 546 shares. Sarah Krassenstein on the day of the original issue, sold 350 shares to her son Harry Krassenstein, and she has since held only 15 shares. From time to time there have been other sales and transfers of the balance of the stock originally issued to Edward Krassenstein and of that issued to Mr. and Mrs. Shamberg. At the time of the execution of the contract here in question, the stockholders and their stock holdings were: Edward Krassenstein 546, Sarah Krassenstein 15, David Krassenstein 885, Morris Krassenstein 850, Herbert Krassenstein 850, and Harry Krassenstein 350.
The negotiations which led to the execution of the contract were initiated by the complainant Israel Lerner and one Max Schwartz. They visited the garage, met Edward Krassenstein and inquired if the garage was for sale. He said it could be bought. Mr. Schwartz then moved to a distant city, and Mr. Lerner continued the negotiations. He consulted an attorney, had the attorney visit the garage, talk with Edward Krassenstein, and examine the company's books. Mr. Lerner then interested the complainant Jack Beck in the proposition and together they called on Edward Krassenstein at the garage and came to an understanding with him. The following day, March 16th, 1946, the contract was prepared by complainants' attorney and executed.
The testimony is divergent with respect to execution of the contract by Sarah Krassenstein. She had not been apprised of the negotiations; without notice, her husband appeared at their home with the complainants, introduced them, and announced that he had sold them the garage. He presented the contract for her signature as president of the corporation. She declares that, in the presence of the complainants, she expressed doubt of her authority to sign and said that the other directors should be consulted. She insists that she was "coaxed" to sign by her husband and by the complainants, *Page 329 
and finally persuaded to do so. Her testimony was corroborated by Mr. Krassenstein. Her state of mind may be judged by what she did; the following day she began telephoning her four sons; as she contacted them, she revealed what had occurred; she also visited and consulted an attorney. The complainants too, were in exact accord in giving their version of what transpired at the Krassenstein home. They testified that Mrs. Krassenstein suggested no doubt as to her authority to sign, said nothing about consulting the other directors, and signed without objection.
It is certain that the four sons of Mr. and Mrs. Krassenstein knew nothing of the negotiations between their father and the complainants until after the contract had been fully executed. The sons were all directors of the corporation and, together, they owned 2,950 shares as against 561 shares owned by their parents. Immediately upon notification by their mother of the attempted sale, they disavowed the contract; waivers of notice were signed, a directors' meeting called, a resolution repudiating the contract was adopted and their attorney dispatched a letter to the attorney of the complainants advising him of the repudiation. All this consumed about 20 days, a not unreasonable time, the circumstances considered.
Following the execution of the contract, complainants gave Edward Krassenstein a check for $2,000 on account of the purchase price, $22,000. Two days later Mr. Krassenstein deposited the check in the company bank account. There the money has since remained, unused. The letter of repudiation was mailed April 8th, 1946. Three days thereafter Mr. Krassenstein offered to return the deposit; complainants rejected this offer. May 4th, 1946, a company check for $2,000 was forwarded to the complainants' attorney. It has not been cashed.
Complainants stress the fact that the contract is in every respect in proper legal form. They maintain that the corporate seal, the signatures of the president and secretary of the corporation, and the formal certificate of acknowledgment upon the contract, raise a presumption of proper execution, duly authorized, which presumption can be overcome only by *Page 330 
clear, satisfactory and convincing proof. Generally speaking, such is a correct statement of the law. Here, however, the complainants dealt directly with the two officers, saw them sign, heard the acknowledgment taken and witnessed the impressment of the corporate seal. They knew they were dealing only with the secretary and the president of the corporation, and that they were attempting to purchase not only all of its assets but to terminate its activities for five years. Obviously this was not a transaction of usual or ordinary corporate business by these officers. Leggett v. New Jersey Manufacturing and Banking Co.
(Court of Chancery), 1 N.J. Eq. 541, 554.
Almost at the inception of the negotiations the complainant Lerner was advised that he was dealing with a corporation. He retained an attorney and had him examine the company's books; the attorney asked for but was not shown a resolution authorizing a sale or execution of the contract; he accepted Mr. Krassenstein's statement that he "was the whole works." The complainant Beck was also informed that he was negotiating for corporate property, and all three came to know that there were other stockholders and directors. They did not insist upon seeing a copy of a resolution of authority nor did they seek out any of the other stockholders or directors. They took the risk of lack of authority in Mr. and Mrs. Krassenstein to bind the corporation or of a refusal of acquiescence by their sons in their acts.
I am convinced by the evidence that the four dissenting stockholders-directors own their stock, and that they disavowed the contract and its execution as soon as they were advised of its existence. As to these four stockholders and directors, the complainants had gone forward with the preparation and execution of the contract at their peril. They were in duty bound to inquire further than from the secretary of the company for his authority to bind the corporation. Ely v. Credit Men'sAdjustment and Interchange Bureau (Court of Chancery),106 N.J. Eq. 472, 473; 151 Atl. Rep. 208; Polhemus v. Holland TrustCo., 61 N.J. Eq. 654; 47 Atl. Rep. 417. "The general rule of agency that a person dealing with an agent must use reasonable diligence and prudence *Page 331 
to ascertain whether the agent acts within the scope of his powers, and is therefore presumed to know the extent of the agents' authority, is fully applicable to persons dealing with another as the officer or agent of a corporation." 13 Am. Jur.,Corporations, § 891. And, "A person dealing with an agent," "is not entitled to assume the existence of any extraordinary state of facts in order to bring the acts of the agent within the scope of his apparent authority." Ibid.
The contract was prepared by the attorney of the complainants in their presence and in the presence of Edward Krassenstein. The attorney inquired as to the adoption of a resolution of authority but did not insist upon inspecting it. Had he or the complainants done so, they must have learned that no resolution had been adopted. The attorney did insist upon having the corporate seal. It was at the garage and Mrs. Krassenstein, the president, was at her home. Complainants accompanied Mr. Krassenstein to the garage where he obtained the seal. At the garage complainants saw and were introduced to David Krassenstein, a stockholder and director. Complainants did not indicate to him the purpose of their visit and made no inquiry of him with respect to his approval or disapproval of the sale. The presence of the common seal of a business corporation upon a contract purporting to be that of the corporation is prima facie evidence that it was affixed by proper authority. But, it is not conclusive; it may be shown that it was affixed without authority. Leggett v. NewJersey Manufacturing and Banking Co., supra. And, by virtue of his office alone, no executive officer of a corporation has any authority to sell or make a contract for the sale of real estate of the corporation necessary to the continued operation of its business. 13 Am. Jur., Corporations, § 939.
While the testimony of Mr. and Mrs. Krassenstein was unsatisfactory in many particulars, I am convinced that she did not sign the contract without expressing either doubt as to her authority to do so or doubt that her four sons would approve of the sale. Two of these boys had just been released from military service and had obtained no permanent positions. They demonstrated positive, independent dispositions *Page 332 
as they gave their testimony. They said that they desired to carry on the garage business if their father did not wish to do so. That would be natural, and I believed them. It appears to me that Edward Krassenstein must have told the complainants that he believed he could secure his sons' approval of the sale, and that the complainants accepted his assurance in that regard. This, and only this, would explain the apparent willingness of the complainants and especially of their attorney, to accept the word of Edward Krassenstein.
The law does not ordinarily imply in the secretary or the president of a business corporation, the power, ex officio, to bind the company by his act. Harris v. Congress Hall HotelCo. (Supreme Court), 76 N.J. Law 367, 368; 13 Am. Jur., §§897, 898 and 908. The complainants, having been advised that they were dealing with the secretary of the corporation, were in duty bound to inquire for and personally examine, or have their attorney examine, the record authorizing the secretary and the president to sell all the assets of the corporation. Ely v.Credit Men's Adjustment and Interchange Bureau, supra. One dealing with a corporation must inform himself of the powers of the officers or of the agent purporting to act for it if he hopes to effectuate a binding contract. Aerial League of America v.Aircraft Fireproofing Corp. (Court of Errors and Appeals),97 N.J. Law 530; 117 Atl. Rep. 704.
An obvious weakness in the case of the complainants is that the contract they seek to enforce would require a transfer, by the corporation, of all its assets and the cessation of itsactivities for at least five years. A corporation (except railroad and canal corporations) may, by authority of the statuteR.S. 14:3-5, sell or exchange all of its property and assets, including the good-will of its business, but only when such action has been "authorized by the affirmative vote of two-thirds in interest of the holders of each class of stock having voting powers on the proposal given at a stockholders' meeting duly called for that purpose, or when authorized by the written consent of two-thirds in interest of the holders of each class of stock having voting powers on the proposal."
"Our decisions have always been that the president of a corporation, although its executive head, is not empowered *Page 333 
to bind the corporation in all of its business affairs."Economy Auto Supply Co., Inc., v. Fidelity Union Trust Co.
(Court of Errors and Appeals), 105 N.J. Law 206. (Italics supplied.) And see cases collected in Aerial League of America
v. Aircraft Fireproofing Co., supra. In C. Berenda Weinberg,c., Inc., v. Weinberg, 105 N.J. Eq. 690; 149 Atl. Rep. 362;
affirmed, 108 N.J. Eq. 180; 154 Atl. Rep. 629, it was said that to sell and dispose of all the property of a corporation is not company business. And in Aerial League of America v. AircraftFireproofing Co., supra, our Court of Errors and Appeals held that the objects and business of a corporation cannot be abandoned or sold out without the consent of all its members. And see Zabriskie v. Hackensack and New York Railroad Co., 18 N.J. Eq. 178; 90 Am. Dec. 617.
In American Heating Co. v. Bullard (United States CircuitCourt of Appeals, 6th Circuit), 290 Fed. Rep. 896, 899, the court said: "The law is settled without apparent conflict that neither the directors nor a majority of the stockholders of a solvent, going corporation [New Jersey corporation] have power to sell all its property and assets, thereby disabling itself from achieving the objects of its creation, against the dissent of a single stockholder." (Italics supplied.) See, also, Kean v.Johnson (Court of Chancery), 9 N.J. Eq. 401, 408; Sewell v.East Cape May Beach Co. (Court of Chancery), 50 N.J. Eq. 717; 25 Atl. Rep. 929; Mitchell v. United Box Board and PaperCo. (Court of Chancery), 72 N.J. Eq. 580; 66 Atl. Rep. 938;Zabriskie v. Hackensack and New York Railroad Co., supra.
Complainants call attention to another legal principle: If a corporation holds an officer out, or allows him to appear as having authority not usual to his office, it will be bound by acts done by him within the scope of his apparent authority.Beach v. Palisade Realty and Amusement Co. (Court of Errorsand Appeals), 86 N.J. Law 238; 90 Atl. Rep. 1118. Otherwise stated, "The rule is that the authority of an agent to do certain acts in behalf of his principal may be inferred from the continuance of the acts themselves over such a period of time, and the doing of them in such a manner, that the *Page 334 
principal would naturally have become cognizant of them and would have forbidden them if unauthorized." See Jackson Realty Co. v.Lehman (Court of Errors and Appeals), 83 N.J. Eq. 636, 639;92 Atl. Rep. 374.
In the instant case, however, the facts, as I have felt impelled to find them, negative any such inference. It is admitted that the complainants had no previous business dealings with the corporation, or contact with its officers; they could not, therefore, have been mislead by any course of conduct that preceded this particular transaction. There is no proof that Mrs. Krassenstein was ever held out as having power or authority to sell corporate assets without formal action by the board of directors. Furthermore, the evidence is conclusive that in transactions in which the corporation had bought or sold real estate, formal action was taken by its board of directors and evidenced by resolution: May 18th, 1937, the corporation was in default in payment of mortgage interest and taxes; it conveyed the garage property to the mortgagees in satisfaction of the mortgage; this action was authorized by the directors and a resolution was certified by the secretary and filed with the title company; attached to the resolution was a consent to the sale signed by seven of the corporation's then eleven stockholders. December 26th, 1944, the corporation repurchased the garage; an agreement to repurchase was executed; authority to make the agreement was conferred by the board of directors; a resolution was formally adopted and a copy certified and filed with the title company.
There is no evidence in this case that the defendant corporation has ever made a sale of its personal property in bulk, or of its stock in trade, or of its furniture and fixtures, or of the good-will of its business, or ever covenanted not to engage in the garage business.
When the corporation opened its bank account that action was authorized by resolution of its board of directors and a copy of the resolution was certified and filed with the bank.
The complainants call attention to the recent opinion of Vice-Chancellor Kays in Royal Blue Coaches v. Delaware RiverCoach Lines, Inc., 140 N.J. Eq. 19; 52 Atl. Rep. *Page 335 
2d 763, and argue that Edwards and Lewis, Incorporated, is a "family affair" and the alter ego of Edward Krassenstein. There are several reported cases in this state concerning authority of corporation officers to bind the corporation, where the corporations are characterized as "family affairs," as, for instance, Ritz Realty Corp. v. Eypper and Beckmann, Inc.
(Court of Chancery), 101 N.J. Eq. 403; 138 Atl. Rep. 900;
affirmed, 103 N.J. Eq. 24; 141 Atl. Rep. 921; Zuendt v. A.Eisenstein, Inc., 139 N.J. Eq. 476; 51 Atl. Rep. 2d 898.
However, in the cases cited, the facts determined by the court led to the conclusion that one or two individuals dominated corporate action. Here the facts as I have determined them, would not warrant such a conclusion.
Complainants also argue that there was not a timely repudiation of the contract by the four dissenting directors and, therefore, they must be judged as having acquiesced in the action of the president and secretary. Ratification by a corporation, or its stockholders and directors, will, of course, be implied from acquiescence or acceptance of benefits, but it is essential to implied ratification that it and the acceptance of benefits bewith knowledge of the facts. Beach v. Palisade Realty andAmusement Co., supra; Trifeld v. Winchester Dev. Co. (Courtof Chancery), 105 N.J. Eq. 50; 146 Atl. Rep. 873; Feist andFeist v. A. A. Realty Co. (Court of Errors and Appeals),105 N.J. Law 461, 464; 145 Atl. Rep. 478; Elfenbein v.Luckenbach Terminals, Inc. (Court of Errors and Appeals),111 N.J. Eq. 67, 72; 166 Atl. Rep. 91.
In the present instance, four of the directors, as I have already determined, had no knowledge of the negotiations or of the execution of the contract until after it was signed. When informed thereof, they immediately disavowed the sale and contract. There was no acceptance of benefits by the four directors or by the corporation. True, the latter has had $2,000 in its bank account for months, but it made no use thereof, and it has endeavored to return the money to the complainants.
"Specific performance is a remedy within the sound discretion of the court, and should not be granted unless the *Page 336 
right thereto is clear and conclusively established." Kelleher
v. Bragg, 96 N.J. Eq. 25; 124 Atl. Rep. 530; affirmed, 97 N.J. Eq. 547; 128 Atl. Rep. 921; Mayo v. Borovsky (Court ofChancery), 135 N.J. Eq. 447; 39 Atl. Rep. 2d 232. As I have resolved the evidence in this case, I must advise a decree dismissing complainants' bill.