The bill of complaint is for the specific performance of a certain contract for the sale of real estate located at Teaneck, New Jersey. The contract is dated August 5th, 1925, and is made between Eypper Beckmann, Incorporated, a New Jersey corporation, as the seller, and Edward D. Newman, as the purchaser. The purchase price is $35,373 (not in excess of $1,300 per acre), upon which a deposit of $3,000 is acknowledged, $9,000 in cash or certified check was to be paid upon taking title and $17,000 by the purchaser assuming a mortgage covering said property, and the balance was to be in the form of a purchase-money mortgage. The title was to close at the office of Eypper Beckmann, Incorporated, on November 5th, 1925, at twelve o'clock or before, at the option of the purchaser, upon the giving of five days' notice in writing.
The contract of sale was signed by William J. Eypper, president, and by Edward D. Newman as the purchaser. The description covers approximately twenty-seven acres of land.
The agreement was assigned by Edward D. Newman to Ritz Realty Corporation, the present complainant, which assignment is dated September 23d 1925, and is acknowledged on September 30th, 1925.
The complainant in support of its claim showed, in substance, through Mr. Edward D. Newman, the original purchaser mentioned in the contract of sale, that he is a lawyer, practicing in New York; that he bought this property from the defendant without ever inspecting it, and relied solely upon the representations made to him by one Lyminfeld and Mr. Newman's brothers; that he called at the office of Eypper Beckmann, Incorporated, delivered a check of $2,500, which sum together with $500 previously given by him to Lyminfeld made the initial deposit of $3,000 mentioned in the contract; that he made two corrections at the time of signing *Page 405 
the agreement, one being that the balance of the purchase price may be paid by certified check, and the other that the purchase-money mortgage may be given by the purchaser or his assigns.
He says that after the agreement was signed, he had a conversation with Mr. Beckmann, the secretary and treasurer of the defendant corporation, over the telephone, on September 25th, 1925, and Mr. Beckmann told him that he was satisfied to give him the property and that he arranged a closing date with Mr. Beckmann; that he thereupon wrote a letter dated September 25th, confirming the conversation, and upon receiving a communication from the defendant's attorney, repudiating the agreement, and returning the $3,000, he proceeded to make a tender in accordance with the terms of the agreement, and such tender was made at the office of Eypper Beckmann, Incorporated, on October 14th, 1925.
Supporting his claim, he produced three witnesses, his two brothers and Lyminfeld. The two brothers testified, in substance, that the property was offered to them by Beckmann in the presence of Lyminfeld, at $1,300 per acre, in the month of July, 1925. Lyminfeld also testified to the same state of facts. One witness, Kelly, testified that the property had gone up in value between August 5th and September 25th, 1925, from $1,300 to about $2,700 per acre.
A letter was received dated September 30th from David N. Popik, repudiating the contract, which reads as follows:
"The alleged contract entered into by yourself and Mr. Eypper in behalf of the Eypper Beckmann, Inc., is hereby repudiated. Mr. Eypper was without authority to execute any contract for the sale of the corporation property and did so without consulting the officers and directors of the corporation. I might further state that Mr. Eypper was induced to attach his signature to a contract for the sale of the premises involved upon misrepresentation of certain facts. I am, therefore, returning a check to your order for $3,000."
The defendant contends that it is a corporation consisting of four stockholders, who are Mr. and Mrs. Eypper and Mr. and Mrs. Beckmann, each family holding fifty per cent. of the stock. Mr. Eypper is the president, and Mr. Beckmann *Page 406 
is the secretary and treasurer. The corporation did not hold a meeting nor pass a resolution, nor has given any authorization to Mr. Eypper to make the agreement of sale. It further contends that Lyminfeld, who acted as the intermediary or broker in the transaction, was a friend of Beckmanns, he having business and social connections with him for some time, and that upon the representations of Lyminfeld that Beckmann, who was then absent on his vacation in Canada, agreed to sell the property at $1,300 per acre, and that Eypper, not being able to locate Beckmann, after sending a telegram inquiring about the statements made by Lyminfeld, was induced by Lyminfeld to sign the agreement of sale. In support of the defendant's contention, a telegram was produced reading as follows: "Did you offer Lyminfeld's client farm at $1,300 per acre," signed William J. Eypper, and dated August the 3d 1925.
On the day when the telegram was sent Eypper received a check of $500 from Lyminfeld and did not deposit it until August 5th, on which day the agreement of sale was made. Between August 3d and August 5th, a report came in from the telegraph office to the effect that Mr. Beckmann could not be located, and Lyminfeld, in the meantime, was calling frequently on Eypper, insisting upon making the agreement, insisting that Beckmann had agreed to sell the property at $1,300 per acre.
The purchaser called at the office on August 5th with an additional check of $2,500, about two o'clock in the afternoon, and the agreement was thereupon drawn; that during that time, and before the consummation of the deal, Eypper sent down the $500 check for deposit, and when the agreement was finished, it being after banking hours, the check of $2,500 was deposited the next morning after the agreement was signed. A letter was thereupon sent by Eypper to Beckmann advising him of the deal, Beckmann being still in Canada on his vacation. He received the letter about the 12th of the month and immediately sent a telegram to Eypper reading as follows: "Quoted Lyminfeld $1,600; refused $3,600 from Smith, Ridgefield Park," signed George H. Beckmann, and dated August 12th, 1925. *Page 407 
Beckmann arrived from Canada on August 19th, and sent for Lyminfeld. He offered to return the deposit and charged him with misquoting the purchase price, also telling him that he would not go through with the deal.
On September 25th he spoke to Edward D. Newman on the telephone and says that he informed him that he would not convey the property.
The testimony of Eypper and Beckmann was to the effect that Eypper had only authority to take care of financial matters, such as procuring mortgages and other incidental office work, but that he had no power to sell the corporate property, and that the selling of property was entirely under the supervision of Mr. Beckmann.
The certificate of incorporation, together with the minute book and by-laws, were offered in evidence, showing that no resolution or any authority was passed or given to Mr. Eypper, as president, to sell this property. Beckmann denied offering said property at the rate of $1,300 per acre, and insisted that his offer was at all times not less than $1,600 per acre. This is flatly denied by the two brothers of Mr. Newman and Lyminfeld.
The only questions presented by this case are:
1. Was the execution and delivery of the contract by Eypper for and in the name of the defendant corporation binding upon the defendant?
2. Is there any fact or circumstance which bars complainant's right to a decree for specific performance?
The defendant corporation is composed of William J. Eypper, holding one hundred and twenty-four (124) shares; Agnes N. Eypper, his wife, holding one (1) share; George H. Beckmann, holding one hundred and twenty-four (124) shares, and M.F. Beckmann, his wife, holding one (1) share.
From the testimony I am convinced that Mr. Eypper and Mr. Beckmann are really partners in corporate form. Mr. Beckmann himself testified that when he was absent from the office he left the entire management and control of the corporate affairs with Mr. Eypper, the president. I am satisfied that Mr. Beckmann knew of the dealings between Mr. Newman and Eypper Beckmann, Incorporated, because he *Page 408 
personally took Mr. Newman's brothers and Dr. Lyminfeld to the premises, showed them around and quoted the purchase price of $1,300 an acre. It is a significant fact that Mr. Eypper, as the president, should issue a binder on August 3d, then execute the contract on August 5th, and hear nothing from Mr. Beckmann until August 12th, when the alleged telegram was received from Canada, and then retain the $3,000 deposit paid by Mr. Newman until September 30th, a period of approximately seven weeks.
In this case it is very evident that the desire to repudiate the contract is because the value had gone up in price.
The defendant has not in any manner whatsoever shown any fraud on the part of Newman or his agent; as a matter of fact I am convinced that Dr. Lyminfeld was not Newman's agent, but was the defendant's agent to endeavor to induce Newman to purchase the property on behalf of defendant which he was successful in doing.
The minute book which was offered in evidence showed no record of any transactions, and, in fact, showed that there were no meetings either of the stockholders or directors of the corporation since June, 1924, which was the time when the corporation was organized. It is very apparent that from the time the corporation was formed, both Mr. Eypper and Mr. Beckmann had handled numerous real estate transactions, and nowhere does it appear that they ever called a directors' meeting or passed resolutions to have the contracts executed. I am of the opinion that complainant was relieved from making any formal tender by reason of the defendant's repudiating the contract on September the 30th.
The testimony satisfies me that the refusal of the defendant to carry out the contract is without justification whatsoever. Courts of equity do not favor corporations avoiding their contracts in this way. The president of the company had the apparent authority to bind it, and if any false representations were made the complainant did not make them. It would appear now that the defendants are trying to get out of the contract because the property has doubled in value.
 I will advise a decree in accordance with these views. *Page 409