The bill of complaint in this case was filed to compel the defendant to specifically perform certain agreements dated *Page 20 
January 25th, 1944, and February 4th, 1944, for the sale and purchase of certain bus line rights.
The agreement of January 25th, 1944, was signed by the president of the defendant, the seal of the corporation affixed and attested by the secretary. The complainant duly executed the contract. By the terms of the agreement, defendant was to sell to the complainant for the sum of $14,000 a certain portion of its operating rights commonly designated as the "South Main Division" which it had theretofore acquired from the Lehigh Valley Transportation Company. The agreement, among other things, provided:
"Both parties hereto agree to file a joint application with the Interstate Commerce Commission, asking for the approval of the within transaction, and both parties further agree to take whatever steps are necessary before the Interstate Commerce Commission or any other regulatory agency in order to carry out and effect the purposes of this agreement."
Another agreement, supplementary of the above, and executed in the same manner was made on February 4th, 1944. By the terms of this agreement, the defendant acknowledged the receipt of $14,000 and transferred, assigned and set-over to the complainant "all its right, title and interest in and to so much of the operating rights it now has and may have acquired by virtue of the aforesaid certificate M C F 2193, more particularly known as the South Main Street Division." This agreement also provided "that there is also conveyed any rights in said operation which the said Delaware River Coach Lines, Inc., may have acquired by virtue of certain certificates issued by the Board of Public Utility Commissioners of the State of New Jersey." Under this agreement the complainant, as purchaser, acquired no title, legal or equitable, in the defendant's franchise. It acquired only the right to apply for the approval of the same. See Hart v.Seacoast Credit Corp., 115 N.J. Eq. 28, 31; affirmed, 116 N.J. Eq. 573.
In furtherance of the foregoing agreements, on February 5th, 1944, application was made to the Interstate Commerce Commission on its form B M C — 76 to transfer certificates *Page 21 
of public convenience and necessity. The application was issued on behalf of the parties by their respective presidents. The application was accepted by said officers and expressly states that the said presidents were authorized to execute the application on behalf of the parties.
The Interstate Commerce Commission, on February 14th, 1944, wrote to Hon. Thomas L. Hanson, a member of the bar of this state who represented both parties to this transaction and who had forwarded the application to the Commission, informing him that because of the number of motor vehicles operated by the parties, the transaction was "within the purview of section 5, and application for approval and authorization thereof is required to be filed on Form BMC — 44."
Mr. Hanson thereupon informed the respective presidents that a new application should be prepared and requested the additional information necessary to submit the proper form. The defendant has not furnished such information and its failure so to do prevents the complainant from effectuating the transfer. Complainant asks this court to direct the defendant, through its board of directors and proper officers, to make and diligently prosecute to a conclusion any and all applications both to the Interstate Commerce Commission and the Board of Public Utility Commissioners which may be required to effectually carry out the terms and conditions of the aforesaid agreements.
The only defense pleaded by the defendant is that the agreements were executed on behalf of the defendant without its authority. Defendant alleges that the executions of the agreements were not authorized by its board of directors and stockholders in meeting assembled; that proper corporate action was never taken; and that, therefore, the agreements are not binding obligations of the defendant.
The defendant corporation is a "family affair." Sixty-eight shares of stock were issued and are owned by the Ferraro family. Alfred J. Ferraro is president and treasurer and owner of 34 shares. His son, John Ferraro, is vice-president and owns 17 shares. Camillo Ferraro, his daughter, is secretary and owns 17 shares. The board of directors consists of the father, son and daughter. *Page 22 
The corporation, since its organization, has been directed and controlled by Alfred J. Ferraro. He fixed the salary of the secretary with the knowledge and consent of his son. He executed on behalf of the corporation an agreement with a labor union relative to wages, c., of the corporation's employees. This agreement was made, presumably, without authority from the board of directors, as the corporate minutes do not show such authority. As a matter of fact, the corporate minute book shows a complete absence of any corporate action from the time of the organization until the bill of complaint was filed in this cause. The secretary of the corporation testified that she signed the agreements in question and affixed the corporate seal at her father's request without reading their contents.
The defendant contends that the father and son were estranged from December, 1943, until March, 1944, Because of this estrangement it is contended that the son, who was an officer and director of the corporation, had no knowledge of the making of the contracts which are the subject-matter of this suit. The father and son became reconciled after the agreements were entered into and they met, together with the daughter, and discussed the agreements. John Ferraro testified that he first learned of the proposed transfer to the complainant at this meeting and objected to its consummation because it would deplete the corporate assets by forty per cent. of the gross revenues.
Subsequent to this meeting on March 22d 1944, the father and son attended a conference at Mr. Hanson's office with certain union officials and with Mr. Eick, the president of the complainant corporation. Alfred J. Ferraro testified that at the beginning of the conference he announced the defendant would not consummate the transaction. Mr. Eick and Mr. Hanson stated that the object of the meeting was the assumption of the defendant's labor union contract by the complainant and both of them denied Ferraro stated that the defendant would not go through with the transfer. John Ferraro admitted that he remained mute throughout the entire meeting. I am convinced that the correct version of this conference is as testified to by Mr. Eick and Mr. Hanson. *Page 23 
The meeting lasted for more than an hour. It is difficult to understand why the meeting continued for such duration if Mr. Ferraro at its inception notified those present that the defendant did not intend to perform the agreements. When Mr. Ferraro was questioned by the court as to this, his answer was very evasive.
If the officers of the defendant corporation were not expressly authorized by its board of directors or stockholders to execute the agreements by prior resolution, I am satisfied that the subsequent conduct of the stockholders and board of directors, after they were fully cognizant of their agreements and terms now precludes the defendant from denying their validity. See Oliver
v. Autographic Register Co., 118 N.J. Eq. 72, 75; affirmed,119 N.J. Eq. 481. The representatives of the defendant should have apprised the complainant of the lack of authority of the officers who executed the agreements and of the intention of the defendant not to complete the transaction at the conference on March 22d 1944. As I have stated above, this was not done. Instead, the defendant's officers and directors, having full knowledge of the pending transfer, permitted Alfred J. Ferraro, the president, to continue negotiations with the complainant and made no claim of absence of authority until the answer was filed in this court. Vice-Chancellor Lewis in Oliver v. AutographicRegister Co., supra, said:
"The claim that the president exceeded his authority seems to be a mere afterthought for the first time considered as affecting the validity of the contract, c."
Even as late as August, 1945, it appears that the defendant was willing to complete the transaction if the complainant would accede to certain terms which were not included in the written agreements. On August 6th, 1945, Mr. Hanson wrote to Mr. Ferraro, in part, as follows:
"In view of your conversation with me, I understand that you want to run over all the files and that you will then be prepared to advise Eick definitely whether you intend to go through with this agreement."
Ferraro replied, in part, as follows:
"If you will send me all the information available in this matter, we could probably save some time in arriving at some arrangement." *Page 24 
Obviously the defendant had made a bad bargain and is now attempting to avoid responsibility by the spurious defense of lack of authority. Courts of equity do not favor the avoidance of corporate agreements in this manner. Ritz Realty Corp. v. Eypper Beckmann, 101 N.J. Eq. 403; affirmed, 103 N.J. Eq. 24.
The defendant contends that this court cannot decree specific performance of the contracts for the reason that the performance is dependent upon the consents of the Interstate Commerce Commission and the Public Utility Commission. Such contention is without merit. The complainant does not seek the consent of these agencies by means of a court decree. Complainant asks for a decree directing the defendant to apply to the Interstate Commerce Commission and the Public Utility Commission for consent to the transfer agreed upon. Concededly, this court will not attempt to make a vain decree by compelling these agencies to consent to the transfer. However, it has the power to lead the defendant to the Commission and require it to do everything on its part that it agreed to do under the terms of the contracts in order to effectuate the transfer. See McClusky v. O'Brien,137 N.J. Eq. 20, 23.
After the original briefs were filed, the solicitor of the defendant called the court's attention and reposed reliance upon the case of Ginsburg v. White, 139 N.J. Eq. 271. The facts in the Ginsberg Case are clearly distinguishable from the facts in the case before me. In that case the court stated that the contract made by the parties was "silent, as to what, if anything, was to be done by way of giving practical effect to the words of sale." The court refused to enforce the agreement of the parties because of its lack of certainty and its indefiniteness. In the pending case the agreement of January 24th, 1944, expressly states what is to be done practically in order to give effect to the sale and which is quoted near the beginning of this opinion. The absence of the foregoing provision or one similar to it from the contract in the Ginsberg Case is the reason that the court refused to enforce it.
I will advise a decree in accordance with these views. *Page 25