PEARL CREAMERY OF NAPPANEE, INC. *v.*
MONTPELIER CREAMERY, INC.

[No. 18,110. Filed November 19, 1951. Rehearing denied
December 20, 1951. Transfer denied April 16, 1953.]

*Carl L. Chattin,* of Goshen, for appellant.

*Richard W. Mehl* and *Mehl & Mehl,* of Goshen, for appellee.

ROYSE, J.—Appellee, by its complaint in one paragraph, brought this action on an open account for $93,953.04 against appellant. Appellant answered the complaint by an answer of admission and denial under the rules and by a further paragraph pleading an accord and satisfaction. Appellee replied in two paragraphs. The first asserted there was no consideration for the accord and satisfaction; the second averred that the obtaining of a refund of Federal Income Tax by appellee was a condition precedent to the taking effect of the accord and satisfaction. Trial to a jury resulted in a verdict in favor of appellee for $20,000.00. Judgment accordingly.

The error assigned here is the overruling of appellant's motion for a new trial. The specifications of this motion assert error in the amount of recovery in this, the amount is too small; the insufficiency of the evidence to sustain the verdict; that the verdict is contrary to law; and error in the admission of certain evidence. We proceed to consider those necessary to a decision of this case.

At the trial of this cause it was stipulated by the parties "that on the 31st day of December, 1947, the appellant was indebted to the appellee in the sum of $93,953.04, and that in the event of a recovery, the plaintiff (appellee) was entitled to interest at the rate of six percent." The trial court instructed the jury that by reason of this stipulation the jury was to consider this fact proved. Appellant contends that the question as to the amount plaintiff was entitled to recover, if entitled to recover at all, was a question of

law. The instruction of the court was the law of the case and the verdict not being in conformity with the instruction is contrary to law. We agree with this contention of appellant. *Kundred et al.* v. *Bitler* (1932), 93 Ind. App. 691, 696, 177 N. E. 345 (Transfer denied) ; *Cohen* v. *Shubert* (1935), 100 Ind. App. 315, 320, 195 N. E. 574.

A reversal for the foregoing reason and a new trial of the issues in this case would not decide the real question involved in this appeal.

In support of its contention that the verdict was not sustained by sufficient evidence, appellant says: "This is a suit on account. The answer of the defendant alleged an accord and satisfaction. The uncontroverted evidence clearly shows that a transaction was entered into between the Directors of the defendant, who were Grant Hoyt, Russell Hoyt and Donald Hoyt and the Directors of the plaintiff, who were Russell Hoyt, Donald Hoyt and Chester Ray, and J. E. Cox, an individual, whereby the plaintiff agreed to release and discharge an account in the amount of $93,953.04 due from the defendant and whereby Russell, Donald and Grant Hoyt, the stockholders in the plaintiff corporation, would transfer all of the outstanding common stock to J. E. Cox for the sum of $25,000.00 in cash to be paid by J. E. Cox and upon delivery to Cox of an insurance policy on the life of L. M. Hoyt. This agreement was reduced in writing and has been completely consummated. The plaintiff's reply, in three paragraphs, sets up three defenses to the accord and satisfaction of the account receivable. The burden of proof establishing the allegations in the plaintiff's three paragraphs of reply is upon the plaintiff. It was the plaintiff's contention in the trial court that in addition to the written agreement between the parties, there was an oral agreement where-

by the defendant promised and agreed that the Montpelier Creamery Company would receive from the United States Government, in the form of a roll-back of income taxes, some unspecified amount of money due to the discharge of the account receivable owed by the defendant. The second paragraph of plaintiff's reply sets up a failure of consideration based upon the failure of Montpelier Creamery to receive any roll-back of taxes. The third paragraph of reply alleges that the receipt of a tax refund was a condition precedent to the final compromise of the account sued upon and alleges that there was an agreement that in the event a tax refund was not received, the account receivable would be reinstated upon the books and the accord and satisfaction be of no force and effect."

This requires a consideration of facts as disclosed by the record herein. They may be summarized as follows: On or about April 1, 1927 one J. E. Cox took over the business of appellee. He says he operated appellee's business with a partner until 1937 after which he became the sole owner. In the fall of 1945 he sold this business to L. M. Hoyt for $114,000. He received $35,-000 in cash and took a mortgage on appellee which was duly recorded in the county in Ohio where it was doing business.

For some time prior to December 3, 1947 the aforementioned Hoyt owned a substantial majority of the capital stock of both appellant and appellee. The other minority stockholders in these corporations were the sons of said Hoyt. On said last mentioned date L. M. Hoyt was bankrupt. Appellant, because it was insolvent, ceased operations. At the time it ceased operations it owed appellee the sum of $93,953.04 for milk. In addition it owed several large accounts other than secured accounts. Appellee at this time was having financial

difficulties. In an effort to work out its difficulties its Board of Directors did, on said date, appoint the aforementioned Cox to act as its general manager and superintendent. He immediately took full charge of appellee's business. The stock which L. M. Hoyt owned in these corporations was in the hands of the United States Bankruptcy Court. Subsequent to the appointment of Cox as such general manager and superintendent, Grant Hoyt, a son of L. M. Hoyt, purchased from the referee in bankruptcy the stock of L. M. Hoyt in these companies. Two other sons of L. M. Hoyt owned a minority of the stock in these companies. After Grant Hoyt purchased this stock friction arose between the Hoyts and Cox who was continuing to act as appellee's general manager and superintendent.

In the latter part of January, 1948, the Hoyts and Cox commenced negotiations for the sale of all of the stock in appellee owned by the Hoyts to Cox. The story of these negotiations, as set out in appellant's brief (without correction by appellee) from the testimony of Cox, is as follows:

"On or about the first of February in the office of the Montpelier Creamery Company with Chester Ray, Donald, Russell and Grant Hoyt present, we started negotiations for the purchase of the Montpelier Creamery. I saw that something had to be done to clear the stock up and I wanted to make good with the creditors, so I started to negotiate the deal. The Hoyt brothers and I discussed the values and the possibilities of financing the creamery. I offered the Hoyts $16,000 for the stock, but Grant Hoyt, who held the bulk of the stock, said he couldn't take that and they made a counter offer of $35,000. We dickered back and forth and finally came down to $25,000 and that was finally the deal it was closed on. I raised the question of the tax roll back by telling them there was a tentative revised income tax form for the creamery company for a roll back tax and I would apply for that. They

said it was alright with them to do it but Grant wanted to get this $93,000 off of their books and told me there weren't enough assets in Nappanee to cover the protected creditors and therefore they wanted to charge the $93,000 account off as a bad debt for $100. There was nothing said at that time about the account being charged off and being included in the tax roll back. This all took place at the end of January until the 5th day of February. I agreed to assume the accounts payable, the payment of a note at the bank and the mortgage. The tax roll back was again discussed on the 4th of February at my auditor's office in Toledo, at which time the auditors said, in the presence of myself, the Hoyts and Mr. Ray, that the Pearl Creamery Company account, which was charged off, could be included in the roll back of taxes if the account was uncollectible. After the auditors made that statement, Grant Hoyt said that the account was uncollectible and that was why they put the resolution in the minutes."

The record discloses the meeting in the office of Cox's tax consultants and attorney was held at his request. Cox's version of this meeting, as shown by the recital of his evidence in appellant's brief, is as follows:

"At the meeting in Toledo, Ohio, with the two accountants, Mr. Ray and the three Hoyt Boys, Grant Hoyt said that I could use the $93,000 account with Pearl Creamery Company in a claim for a roll back of taxes. Chester Ray then asked the accountants whether or not it would be permissible and Mr. Dobson said it could be used if the account was not collectible and then Grant Hoyt made the statement that it wasn't collectible and that there were not enough assets to cover the protected creditors and there wouldn't be anything for the general creditors. Grant wanted to get rid of the account because he was afraid I would foreclose on the Nappanee plant if I got possession of the stock with the account still outstanding. The Montpelier Creamery Company then applied for a tax roll back and refund for 1946 income taxes. It

was allowed and then disallowed when the revenue collector made an investigation, and the Montpelier Company had to pay the tax, penalties and interest without the benefit of the account being charged off as a bad debt."

Cox stated Grant Hoyt never guaranteed he would collect the roll back from the Federal government. Cox, by reason of his position in appellee at the time, was familiar with its financial affairs.

On the day the meeting was held in the tax consultant's office and in that office appellee adopted the following resolution:

"WHEREAS, The Pearl Creamery Company of Nappanee, Indiana, is insolvent and closed its doors as a going business the third day of December, 1947, and

"WHEREAS, It appears that the claims of preferred creditors exceed the amount of assets of The Pearl Creamery Company of Nappanee, Indiana, and

"WHEREAS, The account receivable in the sum of $93,953.04, due from the Pearl Creamery Company of Nappanee, Indiana, appears to be of doubtful value and should be declared uncollectible, therefore be it resolved:

"That the account receivable due from The Pearl Creamery Company of Nappanee, Indiana, in the amount of $93,953.04, be settled, compromised and released for the sum of $100.00.

"Upon vote being taken the resolution was unanimously carried. There being no further business to come before the meeting, the meeting was, upon motion, duly adjourned.

> "Donald R. Hoyt,
> Secretary

"Russell R. Hoyt,
"Vice-President"

At the same time appellee entered into the following written agreement:

"This agreement, made and entered into this 4th day of February, 1948, Witnesseth: That,

"Whereas, The Pearl Creamery Co. of Nappanee is insolvent and secured creditors appear to have claims in excess of fixed assets of said company, and Whereas,

"By resolution of the Board of Directors of the Montpelier Creamery Co., held on the 4th day of February 1948, it was agreed that a claim of $93,-953.04 was uncollectible and of doubtful value, and should be released.

"Now, Therefore, In Consideration of the sum of $100.00 to it in hand paid, receipt of which is hereby confessed and acknowledged, the Montpelier Creamery Co. does hereby release, remise and quit claim unto the Pearl Creamery Company of Nappanee, all rights, claims and interests in and to the aforesaid account receivable, and for the same consideration the undersigned does hereby bind its successors and assigns.

"In Witness Whereof, the Montpelier Creamery Co. has caused the Board of Directors to hereunto affix their signatures.

"Chester A. Ray—Director
"Donald R. Hoyt—Sec.
"Russell E. Hoyt—Vice President

"J. C. Hope, Montpelier O, 2/4/48
"R. D. Allen, Montpelier O, Feb. 4—1948
"Witness"

On the same day the three Hoyts and Cox entered into a written agreement to sell all of the stock in appellee to Cox for the sum of $25,000. This agreement provided for the sale and delivery of said stock on February 5, 1948.

After the government had finally disallowed appellee's claim for a roll back it commenced this action.

We agree with appellant that the burden of proof was on appellee to establish either or all of the allegations of its three paragraphs of reply.

We are of the opinion the record in this case requires us to invoke the common law maxim that the "law looks to the substance and not to the form". 15 C. J. S. p. 629, §14.

The case of *Ritz Realty Corporation* v. *Eypper & Beckmann, Inc.* (1927), 101 N. J. Eq. 403, 138 Atl. 900 (N. J.), was an action for specific performance of a contract for the sale of real estate. Eypper & Beckmann, Inc. entered into a contract for the sale of certain real estate for the sum of $35,373. A deposit of $3,000 was made and acknowledged at time of contract, $9,000 in cash to be paid when purchaser took title, and balance by mortgage. Contract was signed by Wm. J. Eypper as President. Eypper and Beckmann each owned 124 shares of stock in the corporation. Their respective wives each owned one share of the stock. The corporation repudiated the contract because it was not authorized by any act of the Board of Directors. In rejecting this contention of the corporation the Chancellor said:

"From the testimony I am convinced that Mr. Eypper and Mr. Beckmann are really partners in corporate form. Mr. Beckmann himself testified that when he was absent from the office he left the entire management and control of the corporate affairs with Mr. Eypper, the president. I am satisfied that Mr. Beckmann knew of the dealings between Mr. Newman and Eypper & Beckmann, Inc., because he personally took Mr. Newman's brothers and Dr. Lyminfeld to the premises, showed them around, and quoted the purchase price of $1,300 an acre. It is a significant fact that Mr. Eypper, as the President, should issue a binder on August 3, then execute the contract on August 5, and hear nothing from Mr. Beckmann until August 12,

when the alleged telegram was received from Canada, and then retain the $3,000 deposit paid by Mr. Newman until September 30, a period of approximately seven weeks."

The Supreme Court of New Jersey affirmed this decision. *Ritz Realty Corporation* v. *Eypper & Beckmann* (1928), 103 N. J. Eq. 23, 141 Atl. 921.

In the case of *Manfield and Firman Company* v. *Ben Manfield* (1932), 95 Ind. App. 70, 182 N. E. 539, this court held where the stock of a corporation was owned principally by two persons who divided their time on all work of the corporation, such persons were not employees under the Workmen's Compensation Act. In speaking of the situation in that case we said:

"Those, who own the majority stock, dictate the policy of the corporation, and manage its prudential affairs, are considered in the same category as partners in the management of a business.

"Manfield and Firman in real essence owned this business and managed it in form as a corporation, but in substance it was their business."

To the same effect—*Holycross & Nye, Inc.* v. *Nye* (1933), 97 Ind. App. 372, 186 N. E. 915; *Duesenberg* v. *Duesenberg, Incorporated* (1934), 98 Ind. App. 640, 187 N. E. 750, 190 N. E. 894.

From the full record herein it appears certain to us that the parties hereto, while corporate in form, were in fact partnerships. Our conclusion in this regard, insofar as it applies to appellee, is fortified by the statement of Cox that for about eight years prior to 1945 he operated this business as sole owner.

It seems clear to us that the Hoyt brothers were desirous of selling their business in Ohio operated under the name of appellee if they could obtain a release of the indebtedness they owed to that plant through the

operation of their Nappanee business conducted in the name of appellant. Cox was willing to buy this business because he believed he could obtain a substantial refund from the Federal government by reason of the fact the account here was uncollectible. It is clear his opinion on this question was based on the advice of his own counsel and not upon the representations of the Hoyts. The fact he or his counsel was mistaken does not give him any right to repudiate the agreement he made. His written agreement to purchase all of the stock was made with full knowledge of all the facts. This agreement was clear and unambiguous. It contained no provision that it would be subject to cancellation if the roll back was not allowed. As sole owner of appellee he cannot now repudiate the accord and satisfaction made between the parties hereto.

In the case of *Lucas* v. *Hendrix et al.* (1883), 92 Ind. 54, 60, the Supreme Court said:

"Where several instruments of writing are executed at the same time in relation to the same subject-matter, and based upon the same consideration, they should be construed together as one contract."

We believe that the resolution of appellee's Board, its receipt and release of the claim herein and the contract between the Hoyts and Cox being executed at the same time, relating to the same subject-matter and based on the same consideration, must be construed as one contract. They clearly express the intent of the parties. Their terms could not be varied by parol evidence. The consideration for the accord and satisfaction was the sale of appellee's business by the Hoyts to Cox.

For the foregoing reasons, the verdict of the jury was not sustained by sufficient evidence.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings in accord with the views herein expressed.

NOTE.—Reported in 101 N. E. 2d 709.